THE STATE ex rel. J. C. WEST, Prosecuting Attorney, to the Use of Greene County, Appellant, v. B. J. DIEMER et al.

**Division One, March 3, 1914.**

1. **EVIDENCE: General Objection: Rule Fully Stated.** The objection that testimony or other evidence is "incompetent," without specification or reason given, is always an insufficient objection. The objection that it is "irrelevant and immaterial," without reason or specification given, is also an insufficient ground of objection, unless the evidence is self-evidently incompetent for any purpose in the case. And, as a general rule, error cannot be predicated on appeal of the overruling of such general objections, for the words incompetent, irrelevant, illegal, improper, immaterial and the like are mere epithets and not grounds or reasons.

2. ———: ———: **County Court: Allowance of Claim: Good Faith.** An admission in an agreed statement of facts that the defendant county judges, in allowing a claim of three hundred dollars against the county presented by the county engineer for services, acted in good faith, was good for something, in fact, was an admission of a most material matter, and hence the simple general objection that it was "incompetent, irrelevant and immaterial" was without substance.

3. **COUNTY COURT: Allowance of Claim: Good Faith.** An admission in the agreed statement of facts that the judges of the county court, in allowing a claim of three hundred dollars against the county presented by the county engineer as due him on a salary promised, acted in good faith, is of deep-going significance in a suit by the prosecuting attorney, against the judges as individuals, to recover back for the use of the county the amount of the claim so allowed and paid; for good faith means that they acted honestly, sincerely, openly, without deceit, covin or any form of fraud, and without simulation or pretense, innocently and in an attitude of trust and confidence; and it must be held to mean that they acted within what they thought was the scope of their authority and discretion.

4. ———: ———: **Res Adjudicata: Ministerial and Not Judicial Act.** In the allowance of claims against the county, or in settling with county officers, the county court does not act strictly as a court, or in the performance of a judicial function, and hence their allowance or disallowance of a claim is not *res adjudicata*; but they act as a public board of audit, as ministerial, administrative or fiscal agents of the county. Hence, in

allowing a claim against the county to a county engineer in excess of what it is claimed was fixed as his salary by an order of the court at the time of his appointment, they are not protected from liability on the sole theory that the allowance of the claim was a strict judicial act.

5. ———: ———: ———: **Quasi-Judicial Acts.** While in allowing claims against the county the county court acts in a public ministerial, administrative or auditing capacity, yet, both by the Constitution and statutes, there is an intimate relation between their judicial and ministerial authority and the edges of the two authorities often overlap; so that in the performance of ministerial duties in allowing claims their acts partake of the nature of judicial acts and are so related thereto in color and substance that they may be deemed not inaptly *quasi*-judicial. On that account they are protected from personal liability in allowing a claim against the county except in the inflamed case of fraud, corruption or malice.

6. ———: **Increase of Salary of Highway Engineer During Term: Error in Judgment.** The county court stated to the man whom they were about to employ as highway engineer, who was untried in that capacity, that they considered the services of a highway engineer, if well performed, worth $1,500 per year, and made a proposition to appoint him for two years at a salary of $1,200 and to contract to that effect, but that if at the end of the year he had well performed his duties and demonstrated his competency by actual services they would pay him an additional $300. He accepted the proposition, and the court entered of record an order appointing him for a term of three years and fixing his salary at $1,200. At the end of the year he presented his account for $300 additional pay for services, and the court investigated his work and found that he had well and intelligently performed his duties and allowed his claim. It is admitted that they acted in good faith. *Held*, that they are not personally liable for the amount thus allowed against the county and paid. It was an error of judgment in a matter of law to increase the engineer's salary during the fixed term and to pay it, but as they did not act corruptly or fraudulently or arbitrarily, but in good faith in a *quasi*-judicial matter, they are not personally liable.

7. ———: ———: ———: **Contract for Longer Term Than Statute Permits.** The fact that the contract and order of the county court appointing a highway engineer was for a term longer than the statute permits, to-wit, for three years, has no bearing in a suit brought by the prosecuting attorney against the judges as individuals to recover a sum of money allowed him in excess of the salary fixed by the order appointing him.

Appeal from Greene Circuit Court.—*Hon. Alfred Page,* Judge.

AFFIRMED.

*Sam M. Wear, J. C. West* and *Bowersock, Hall & Hook* for appellant.

The county court of Greene county is and was of statutory origin, and exceeded its powers, prescribed by the laws and the Constitution of the State of Missouri. Laws 1907, p. 401; Sec. 48, art. 4, Constitution; Sec. 8, art. 14, Constitution; State ex rel. Stevenson v. Smith, 87 Mo. 158; Sec. 35, art. 6, Constitution.

*Patterson & Patterson* and *Mann, Todd & Mann* for respondents.

(1)   The allegation is that the court was acting both in a judicial and ministerial capacity in voting the increased salary to the highway commissioner, and that they did it fraudulently and corruptly, etc. Learned counsel for plaintiff in drawing this petition recognized that it was necessary to make these allegations in order to constitute a cause of action, whether the county court was acting judicially or ministerially in making the order amending the contract pursuant to the verbal understanding they had when their contract was made with the highway commissioner and paying him the $300 that they as a court had agreed to pay him in addition to what the written contract provided in the event his work had proven satisfactory and as a premium for such good services.   (2)   If the court in the proceeding in question, or in the proceedings in question, acted judicially, there can be no recovery, whether the court acted corruptly and fraudulently or not.   Stone v. Grove, 8 Mo. 148; Reed v. Conway, 20 Mo. 22; Pike v. McGoun, 44 Mo. 491.   The cases cited hold that while a judicial officer is acting ju-

dicially, however erroneous his decision or corrupt and malicious his motives, he cannot be called to account in a civil action, yet when acting ministerially he may be so called to account.  In reading some of these cases the conclusion might be drawn that when acting ministerially and wrongfully a judicial officer might be called to account in civil action to the injured party for damages.  Yet that is not the holding.  The holding is that something must be shown further than that he merely acted in a ministerial capacity and acted wrongfully.  It must be shown that he acted fraudulently and corruptly as well.  In other words, none of these cases are authority, nor is there any authority for holding that a judicial officer when acting ministerially can be made to respond in damages for his mere wrongful act done in good faith and without any fraudulent intent.  Pike v. McGoun, 44 Mo. 496.  (3) The agreed statement of facts shows that the respondents in this case acted in the utmost good faith and did not knowingly commit any wrong.  Whether they acted judicially or ministerially is immaterial.  We contend they acted judicially.

LAMM, J.—Defendants, during the year 1908, were the judges of the county court of Greene.  In January, 1910, this suit was instituted against them in the name of the State at the relation of the prosecuting attorney to the use of said county.  Its object was to recover from the said judges personally the sum of $300 salary paid to one Marshall as highway engineer for said county for said year.  From a judgment in favor of defendants at a trial to the court without the aid of a jury plaintiff appeals.

To get at the theory upon which appellant predicates liability, attend to the petition.  It alleges that defendants were respectively the presiding judge and the associate judges composing the county court; that "as such judges of said county court they acted, voted

and performed all things herein mentioned in their official capacity;'' that, as provided by law, they appointed Marshall highway engineer in January, 1908, and by order of record fixed his salary at $100 per month for each month during his term; that his official term was fixed by the law and by the order of the court at two years; that said Marshall entered into a bond and contract in the terms required by defendants and thereby became the duly appointed, qualified and acting highway engineer of said county, continuing thereafter to act as such during the year 1908 and received his official salary of $100 per month, paying him in full therefor until the 31st day of December, 1908; that as such highway engineer Marshall became a duly appointed county officer within and for said Greene county in an office existing by virtue of the laws of the State; that said county was not under township organization and that said Marshall during said year was not the surveyor of said county. The petition continues as follows:

''And the said defendants, acting in an official capacity as such county court as said Greene county, severally and jointly and under color of their office, and during time when said court was in session, on the 31st day of December, 1908, did then and there, unlawfully, willfully, knowingly, fraudulently, corruptly, and in excess of the limitations of the Constitution and laws of the State of Missouri, as to their official, judicial and ministerial duty, and in gross neglect of their official duty, gave their consent, voted, allowed and caused to be ordered and adjudged, executed and delivered to the said Fred J. Marshall, a county warrant drawn on the salary fund in the hands of the treasurer of said Greene county, for the sum of three hundred dollars, which said warrant of the said sum of three hundred dollars, was then and there increased extra pay, compensation and salary for the services of said Fred J. Marshall as such county highway engineer within and

for said Greene county, for the year of A. D. 1908, and
being the sum of three hundred dollars over and above
the salary and compensation fixed as aforesaid by said
defendants as the county court of said Greene county,
and for services of said Fred J. Marshall as such high-
way engineer, which had been then and there wholly
performed; and which said warrant for the sum of
three hundred dollars was then and there paid in full
by the treasurer of said Greene county.

"Plaintiff further says that the said defendants,
acting as such county court as aforesaid, did not then
and there have any jurisdiction judicially nor minis-
terially under the Constitution and laws of the State
of Missouri to pass, act, order and render judgment
against the said county of Greene in favor of said
Fred J. Marshall as such county highway engineer, for
the said sum of three hundred dollars, as an amount
and sum being, as aforesaid, an increased, extra pay,
compensation and salary for services wholly rendered
in said year A. D. 1908, and to cause said county war-
rant as aforesaid to be issued, executed, delivered and
paid to the said Fred J. Marshall, and therefore plain-
tiff says that the defendants are justly and legally in-
debted to the plaintiff in the sum of three hundred dol-
lars, to the use and benefit of the county of Greene in
State of Missouri.

"Wherefore, plaintiff prays judgment against the
said defendants, B. J. Diemer, J. P. Reed and J. T.
Phillips, for the sum of three hundred dollars and for
interest thereon at the rate of six per centum per an-
num from date of filing hereof."

The answer was a general denial and the cause
was submitted *nisi* on an agreed statement of facts
comprising nine subheads, which may be summarized
as follows:

First, that at the times mentioned in the petition
defendants composed the county court.

Second, that at its January term, 1908, said court

made an order to the effect that Marshall be appointed to the office of highway engineer for a term of two years under an act of the General Assembly (giving its title) approved March 15, 1907, and was to receive as compensation for his services as such the sum of $100 per month; before entering upon the performance of his duties he executed and delivered to the court a bond in the sum of $1000 for the faithful performance of his duties.

Third, that on the same day the said Marshall entered into a contract with the court as party of the second part. The contract need not be reproduced. In brief, it narrates that Marshall agrees to perform the duties of highway engineer from the 6th day of January, 1908, to the 31st day of December, 1910 (which, it will be observed, is for about *three* years). The county court agreed to pay him for his services $100 per month, payable on the first day of every month. Marshall agreed to give a bond with certain specified conditions in regard to the faithful performance of his duties and to account for and deliver to his successor tools, machinery, books, papers, and other property belonging to said county and to the road districts thereof.

Fourth, that during the October term, 1908, and on December 31st of that year, Marshall presented an account to the court for an allowance. Said account, omitting the date, had, among other items, this: "Due Fred J. Marshall as services as highway engineer as per increase in salary from $1200 to $1500 per year, for 1908, $300."

Fifth, that on the same day, the county court being then in session, it made an order in the premises reading as follows:

"Fred J. Marshall
    vs.
Greene County.
    a/c for $303.04.

"Now comes Fred J. Marshall and presents an account for $303.04 for services as County Highway Engineer as per increase in salary for the year 1908, to $1500 per year, $300, and express charges $3.04, which is by the court examined and allowed and a warrant ordered drawn on the salary fund for the same."

That a warrant for $300 was drawn by order of said court as pay to said Marshall as increase of salary for 1908 and was paid to him, making his salary for the year $1500.

Sixth, that on said day the said court entered a further order to the effect that the salary of the county highway engineer be and is hereby fixed at $1500 for the year 1909.

Seventh, that on the date of the appointment of said Marshall (to-wit, January 6, 1908) the county court was in session and had up the question of the appointment of a highway engineer and the payment of his services; that at the time they "conditionally agreed among themselves" upon the appointment of Marshall and called him before the court; that "acting in good faith" they stated to him that they could not afford to pay for his services $2000 (a sum asked by him for his services per year), but that they considered the services of a highway engineer reasonably worth $1500 per year, if well performed; that while Marshall had been a competent road commissioner and in the judgment of the county court would make a competent highway engineer, yet he was untried in that capacity. On such premises they made a proposition to him to appoint him for two years at a salary of $1200 per annum and to contract to that effect, but that if at the end of the year he had well performed his duties and devoted his time thereto and had demonstrated his competency by actual services for the year 1908, they would pay him an additional $300, making his salary $1500 per annum for 1908 and increasing it thereafter to said sum of $1500; that said Marshall accepted said prop-

osition and thereupon "acting in good faith," the court entered of record the order appointing him, and, "acting in good faith and upon the understanding aforesaid" entered into the contracts hereinbefore referred to.

Eighth, that on the 31st of December, 1908, during the regular October term, 1908, of the court, said Marshall presented his account for $300 additional pay for his services; that the court investigated his work as county highway engineer and fully advised themselves in the premises and "acting in good faith found that the said Marshall had met the requirements of the verbal arrangement of January 6, 1908" and had intelligently, competently, industriously, etc., performed the duties of highway engineer and that, having found those facts, the court "in good faith made the order" allowing him the $300 in addition to his $1200 salary.

Ninth, that "in good faith" and in pursuance of said verbal agreement the court fixed his salary at $1500 for the year 1909.

The agreed statement of facts further sets forth that specifications marked 7th, 8th and 9th are admitted to be the facts, subject to the right of plaintiff to object to the same because they are "incompetent, irrelevant, and immaterial" to any issue and constitute no defense, and "plaintiff hereby makes said objections" to the specifications marked 7th, 8th and 9th. It is further agreed that the court should hear arguments in the cause and pass upon the objections of either party and render judgment subject to the right of exception and appeal.

The bill of exceptions shows that the court overruled the foregoing objections of plaintiff to the foregoing specifications in the agreed statement of facts and plaintiff excepted to that ruling.

The assigned errors here are (1) that the court erred in giving judgment for defendants; (2) and in admitting the evidence set forth in clauses 7, 8, and 9

of the agreed statement of facts for the reason that the same conflicted with the record, the law of Missouri and the express provisions of the Constitution; and (3) erred in rendering judgment for defendants for the reason that under the evidence such judgment is in violation of section 48, of article 4, and section 8, of article 14, of the Constitution of the State of Missouri.

To sustain such assignment, appellant sets forth, under the head of "Points and Authorities," the following generalization as its sole ground for reversing the judgment:

"The county court of Greene county is and was of statutory origin, and exceeded its powers, prescribed by the laws and the Constitution of the State of Missouri. Laws 1907, p. 401; Sec. 48, art. 4, Constitution of Missouri; Sec. 8, art. 14, Constitution of Missouri; State ex rel. v. Smith, 87 Mo. 158; Sec. 35, art. 6, Constitution of Missouri."

The matter may be approached from several angles and we prefer to formulate questions in our own way which, when disposed of, will cover all the assignments of error and dispose of the case.

I. *Of the ruling on evidence.*

It will be observed appellant excepted to the ruling admitting in evidence facts set forth in subdivisions 7, 8, and 9 of the agreed statement of facts. It will also be observed that among the errors assigned is the admission of that evidence over objection. But when appellant came to state "the points relied on" (Rule 15) it omits all reference to error in that behalf and plants itself on only one ground for reversal. Strictly, then, on that view of it, we might consider that error abandoned by silence subsequently in its brief; but we will not let the point break on the narrow edge of technicality, hence we dispose of it on its merits.

The grounds of objection to the evidence, as disclosed by the agreed statement and the bill of exceptions, are covered by a stereotyped stock phrase made up of three generalities, namely: "Incompetent, irrelevant and immaterial." We may guess (but do not know) that under the mask of those generalities are coiled and hid away the propositions that a court of record like the county court may speak only by its record, that the prior verbal understandings between the court and Marshall on the date of his appointment were merged in the order and contract, and could not be admitted to impugn or modify the record entry fixing his salary or the written contract, etc., but learned counsel for appellant put their finger below on no such specific objection to the evidence. They assigned there no such precise ground for its exclusion; *contra,* they contented themselves with a form of objection often condemned, though tolerated now and then. For instance:

In Dickey v. Malechi, 6 Mo. l. c. 186, the point was up whether an objection to evidence on the "general charge of incompetency and irrelevancy" was sufficient to save an exception on the ruling admitting it. Even at that early day it was said: "This court has often determined that such general and sweeping objections are insufficient. The party must point out the objections more specifically to authorize this court to interfere."

So, in Frost v. Pryor, 7 Mo. l. c. 316, we referred our indisposition to consider general objections to evidence to the statute requiring us to review only such matter as has been expressly decided by the court below. It was observed on the mischiefs of general objections that: "It is apparent that these general and sweeping objections to the introduction of a mass of testimony, either oral or written, do not present the points which may have been determined in the circuit court."

So, in Fields v. Hunter, 8 Mo. l. c. 131, the reason of the rule against allowing general objections of the kind in hand is again put upon the statute which forbids the appellate court to review any point not decided below (now section 2081) and we dismissed the matter with this observation as an additional reason: "It is manifest, that unless the party points out specific objections in the circuit court and the bill of exceptions shows what these objections were, the case may be decided on one point by the circuit court, and reversed on another by the appellate court."

Grimm v. Gamache, 25 Mo. l. c. 42, follows the same line of reasoning, thus: "We will not regard such objections. . . . Let the objecting party point out the causes for which he objects, and then the court can at once see, and the adverse party have the opportunity of remedying or of doing away [with] the objections."

In Clark v. Conway, 23 Mo. l. c. 442, the objection below was that "the same was illegal and incompetent." We there said: "The objection can avail nothing in this court. Its generality is fatal to it." Further that for purposes of an appellate court the form of objection was no more specific than to say: " 'I object to the evidence.' " "It was," says the court, "the duty of the objector to say why and for what reason it was incompetent—why, and for what cause, illegal."

The need and office of specific objections were once more observed in Han. & St. Joe Railroad v. Moore, 37 Mo. l. c. 341. Again in Chouteau v. Goddin, 39 Mo. l. c. 229. Again in St. Louis Public Schools v. Risley's Heirs, 40 Mo. l. c. 369, where it was said as an additional reason for definiteness and specification in an objection that: "Evidence may be admissible for one thing in the course of a trial, when it would be wholly excluded for another, and it is the duty of a party objecting to state specifically his reasons therefor."

So, in Margrave v. Ausmuss, 51 Mo. 1. c. 564, the objection to a power of attorney was that: ''It was incompetent, illegal and not responsive to the issues made by the pleadings.'' The objection was overruled and, on error assigned, we held the objection too general and therefore properly disregarded and overruled.

So, in Rice v. Waddill, 168 Mo. 1. c. 120, it was ruled on error assigned for overruling an objection to evidence, thus: ''There was no error in overruling the objection to the letters of Columbus T. Rice, as it assigned no ground other than that they were incompetent, immaterial and irrelevant, which we have often held amounts to no more than 'I object.'''

Later, in Bailey v. Kansas City, 189 Mo. 1. c. 512, a distinction was pointed out and it was ruled thus: ''If the evidence objected to is not competent for *any* *purpose* in the case, a specific objection has no office, and the general objection of irrelevancy, immateriality, etc., will do.''

In Bragg v. Railroad, 192 Mo. 1. c. 342 et seq., there is further discussion on the point and the evil of ambushing specific objections under cover of a generality is animadverted upon. Further on in that case (p. 344) an objection was considered formulated thus: '' 'Objected to by defendant as not a proper hypothetical question and as incompetent, irrelevant and immaterial,' '' and the objection on the score of incompetency, irrelevancy and immateriality was declared too broad and indefinite to challenge consideration.

In Stoner v. Royar, 200 Mo. 1. c. 454, the phrase, ''incompetent, irrelevant and immaterial'' was once more under judicial review. It was held that the word ''immaterial'' means nearly the same as ''irrelevant,'' and that in that particular case the objection ''irrelevant'' was sufficiently specific. It was further ruled that an objection on the ground that the evidence was ''incompetent,'' without a specification in what respect it is believed to be so, is really no objection at all.

In Glenville v. Railroad, 51 Mo. App. l. c. 631 (ROMBAUER, J., speaking), somewhat the same view was taken, to-wit: "Objections to evidence should be as specific as the nature of the case admits of. It may in many cases suffice to object to evidence as irrelevant, because the irrelevancy of the evidence is self-apparent, but it is in no case a sufficient specification to say that the evidence is incompetent, because the reason for the claim of incompetency can always be fully stated. The general terms of objection, immaterial and impertinent, are mere epithets, and in their application to evidence have no legal meaning."

In Kinlen v. Railroad, 216 Mo. l. c. 174, a phase of the question was this: Counsel made a general objection. When asked by the court and opposing counsel to make it more specific, he stood mute. We held it was properly overruled under such circumstances. In that case the doctrine of O'Neill v. Kansas City, 178 Mo. l. c. 100, was reaffirmed to this effect: "When an objection is made to a question propounded to a witness, it should be sufficiently specific to inform the court and opposing counsel of the real point in the objection."

Again in State v. Wilson, 223 Mo. l. c. 170, "objections without assigning any reasons for them" were under review and dismissed with this observation: "In view of the uniform expressions by this court that objections in that form are insufficient to preserve the rulings of the court upon them for review in this court, we deem it unnecessary to burden this opinion with a citation of the authorities. An objection to testimony during the progress of a trial should at least briefly indicate some reason for such objection, and in order to entitle it to the consideration of this court this should be done."

Doubtless during the ninety-four years of the existence of this court, other observations and rulings are recorded and might be gleaned by patient industry,

but we have pursued the matter far. From the learning thus gathered in a summary, we must get at acceptable doctrine; "for assuredly out of the old fields must spring and grow the new corn," if any there be. [Coke. Preface to his Reports, vol. 1, p. 30.]

The premises considered, in this jurisdiction these general rules (with an exception) may be laid down, *viz.*:

First. *Incompetency,* without specification or reason given, is always an insufficient objection to evidence.

Second. *Irrelevancy* and *immateriality,* without reason or specification given, are also insufficient grounds of objection, except where the evidence is self-evidently, i. e., plainly on its very face, so good for nothing as to serve no purpose whatever in the case.

Third. As a general rule error cannot be predicated on appeal of the overruling of such general objections, for the words *incompetent, illegal, improper, irrelevant, immaterial* and the like are mere epithets and not grounds or reasons.

We have taken the pains to reformulate the doctrine because a misconception has arisen at the bar on that behalf, and a loose and heretical notion is much in evidence at trials, to the effect that there is substance in the easily learned, easily recited and unreasoned formula: "Incompetent, immaterial and irrelevant."

In the case at bar the offered evidence was good for something. It was an admission of "good faith" on the part of the county court, a most material matter as presently appears.

The point is disallowed to appellant.

II. *Are defendants liable for an error of judgment in allowing Marshall's claim, absent some form of willfulness, fraud, corruption, or arbitrariness?*

(1)  The case was submitted on the agreed statement of facts bottomed on the theory that defendants acted in "good faith."  Now, good faith is a factor of deep-going significance in this case, as will presently appear.  It means that defendants acted without simulation or pretence, innocently and in an attitude of trust and confidence, acted in the absence of all information or belief of facts that would render the transaction unconscientious.  It means they acted honestly, openly, sincerely, without deceit, covin, or any form of fraud (Platt v. Francis, 247 Mo. l. c. 312), and I think it must be held to mean that they acted within what they thought was the scope of their authority and discretion.  [Platt v. Francis, supra.]

(2)  In the allowance of claims against a county or in settling with county officers, county courts do not act so strictly as a court, or in the performance of a judicial function, that their allowance or disallowance of a claim is *res adjudicata*.  Something of substance might be said in favor of the contrary theory, but at an early day this court considered our statutes and announced the doctrine, on the reason of the thing and because of a good public policy, that county courts in the allowance of claims, as in settling with officers, acted as a mere public board of audit, as ministerial, administrative or fiscal agents for the county and not strictly as a court, hence we have uniformly refused to apply the doctrine of *res adjudicata* to their orders allowing or disallowing claims against the county, or to their settlements with county officers.  That doctrine has always been adhered to and must be accepted as settled.  [County of Marion v. Phillips, 45 Mo. 75 (in connection with which case the reasoning of In re Saline County Subscription, 45 Mo. 52, is pertinent) ; Phelps County v. Bishop, 46 Mo. 68; Reppy v. Jefferson County, 47 Mo. 66; Owens v. Andrew County Court, 49 Mo. l. c. 376 et seq.; State to use v. Roberts, 62 Mo. 388; State to use v. Roberts, 60 Mo. l. c. 404 ;.

Cole County v. Dallmeyer, 101 Mo. l. c. 63; State ex rel. v. Gideon, 158 Mo. l. c. 338 et seq., and cases cited; Givens v. Daviess County, 107 Mo. l. c. ·607 et seq.; Scott County v. Leftwich, 145 Mo. l. c. 32.]

We cannot hold, then, that defendants are protected from liability on the sole theory the allowance of Marshall's claim was a strict judicial act as we are asked to do by their counsel. Judges have a broad immunity from liability for damages for mistakes in judicial acts not allowed to persons acting officially in a ministerial capacity.

(3) But counsel have another string to their bow, to-wit, they invoke the proposition that whether the act of their clients was judicial or ministerial amounts to nothing decisive on final analysis. They argue that, if their acts were those of public ministerial agents, yet, under the solemnly admitted facts of this record, they stand acquit of personal liability for the amount of a claim erroneously allowed against the county and paid. In taking that position they concede by implication the contentions of appellant's counsel, namely, that Marshall held a county office, that of highway engineer (Laws 1907, sec. 1, p. 401); that his term of office as such officer was fixed by the statute at two years (*Ibid.*, sec. 1); that his salary was fixed by order of the county court, acting in accordance with the statute, at $1200, though they might, if they had chosen to do· so, have contracted to pay as high as $2000 and have fixed that sum by their order (*Ibid.*, Sec. 3). They also concede, impliedly, that it was an error of judgment in a matter of law for the county court to increase that salary during the fixed term, at least for services for a past year, by the sum of $300 as here (Sec. 48, art. 4, Constitution; Sec. 8, art. 14, Constitution; State ex rel. Stevenson v. Smith, 87 Mo. 158), and pay such increase. But they say that unless the judges of that court in allowing and paying the claim went beyond a mere honest mistake or error of judg-

ment and acted maliciously, fraudulently, corruptly or wantonly and arbitrarily there can be no recovery. That is the proposition they plant their cause upon and thereby seek to justify the judgment below. We think, on this record, that proposition a sound one and must be allowed to them, because:

In the first place, learned counsel must be held to have brought their suit on the theory that fraud, corruption, or some form of active bad faith was an essential element to recovery. To that end they industriously and boldly in their petition (*q. v.*) made averments to that effect. Presumably the facts failed them and the cause was finally submitted *vice versa,* to-wit, on a statement of facts admitting good faith—a fatal admission as seen further on.

In the next place, county courts in Missouri are by name vested with judicial power. [Constitution, sec. 1, art. 6.] They are made by the same instrument courts of record (Sec. 36, art. 6) and are given "jurisdiction to transact all county and such other business as may be prescribed by law." Agreeably to those constitutional provisions the statutes make them courts of record. [R. S. 1909, sec. 3845.] Their sittings must be public and every person may freely attend. [R. S. 1909, sec. 3862; Constitution, sec. 10, art. 2.] They are given power to audit, adjust and settle all accounts to which the county shall be a party; to pay out of the county treasury any sum of money found to be due by the county on such accounts; to issue process to secure the attendance of person, whether a party or a witness, when deemed necessary in the examination of accounts; to compel attendance by attachment; to examine parties and witnesses under oath in the investigation of accounts; and to commit to jail for contempt for refusal to answer any lawful question. [R. S. 1909, sec. 3781.] In addition to the section just quoted, as a court of record they may punish

for contempt under other provisions of the statute. [R. S. 1909, sec. 3881.]  When an appeal is proper from their "judgments and orders" the circuit court is given appellate jurisdiction.  [R. S. 1909, secs. 3956, 4091.]  An appeal lies from the rejection of a claim in the county court.  [R. S. 1909, sec. 4096.]

In addition to enumerated provisions showing the intimate relation between their judicial and ministerial authority, an intermingling of the two with a line of demarkation so vaguely drawn that the edges of the two authorities often overlap, there are many statutes giving them strictly judicial powers in particular instances.

The premises considered it becomes apparent that, although we have held that in the matter of allowing claims against the county they act in a public ministerial, administrative, or auditing capacity, yet in their performance of ministerial duties in allowing claims their acts partake of the nature of judicial acts and are so related thereto in color and substance that they may be deemed not inaptly *quasi* judicial.  On that account they are protected from personal liability except in the inflamed case of fraud, corruption or malice.  It must be obvious that were the law otherwise it would be impossible to get suitable persons to perform the many and important public duties assigned, under our system, to county courts.  He would be a bold man who would put his personal fortune to the hazard of mistakes in deciding the nice and complicated questions put up to that body.

The question, one of public concern, in some of its phases, is by no means new.  Pike v. Megoun, 44 Mo. l. c. 496 et seq., followed Reed v. Conway, 20 Mo. 22, in holding to the general doctrine announced above. In the Pike case it was ruled:

"When duties which are purely ministerial are cast upon officers whose chief functions are judicial, and the ministerial duty is violated, the officer, although

for most purposes a judge, is still civilly responsible for such misconduct. [Wilson v. The Mayor, 1 Den. 599; Rochester White Lead Co. v. City of Rochester, 3 Comst. 463.] And the same rule obtains where judicial functions are cast upon a ministerial officer. But to render a judge acting in a ministerial capacity, or a ministerial officer acting in a capacity in its nature judicial, liable, it must be shown that his decisions were not merely erroneous, but that he acted from a spirit of willfulness, corruption, and malice; in other words, that his action was knowingly wrongful, and not according to his honest convictions in respect to his duty.''

The Reed-Conway case, supra, quoted with approval from Jenkins v. Waldron, 11 Johns. Rep. l. c. 121. In that case inspectors of election were sued for denying a voter the right to vote. In denying recovery the eminent bench, presided over by no less an authority in the law than KENT, closed its judgment with these words: .

''It would, in our opinion, be opposed to all the principles of law, justice and sound policy, to hold that officers called upon to exercise their deliberative judgments, are answerable for a mistake in law, either civilly or criminally, when their motives are pure, and untainted with fraud or malice.''

To the same effect is Schoettgen v. Wilson, 48 Mo. 253.

These defendants were acting within the scope of their express statutory authority in allowing or disallowing claims. They were not guilty of arbitrarily, wantonly, oppressively or fraudulently conducting themselves and, under such circumstances, they are not personally liable for acting in accordance with their honest convictions of duty. [McCutcheon v. Windsor, 55 Mo. l. c. 153.] The reasoning of Washington County v. Boyd, 64 Mo. 179, sustains the judgment below; and so does that of Edwards v. Ferguson, 73 Mo. 686,

and Knox County v. Hunolt, 110 Mo. 1. c. 75, and Albers v. Merchants' Exchange, 138 Mo. 1. c. 164, and Williams v. Elliott, 76 Mo. App. 1. c. 12 (a case on its facts nearly in point), and so Schooler v. Arrington, 106 Mo. App. 607.

Something is made by respondents of the fact that the contract was for a term longer than the statute permitted. As to that we say that while the acceptance of the appointment on the part of Marshall must be shown outside of the record of the county court (Harkreader v. Vernon County, 216 Mo. 1. c. 706), and the execution of the contract and bond and the fact that official services were performed for a year by Marshall were items of evidence indicating that he accepted the office and performed the duties, yet we cannot see that the fact of the contract lengthening his official term beyond that of the statute has any bearing on any issue in this case. We find no provision in the statute requiring a formal written contract and its existence, in this instance, may be referred to an abundant caution.

Propositions announced lead necessarily to the affirmance of the judgment. If Marshall had been sued we would have had a different question to deal with. Let the judgment be affirmed. It is so ordered. All concur.