RICHARD CONLEY by NELLIE CONLEY, his next friend, Defendant in Error, v. LAFAYETTE MOTOR CAR COMPANY, Plaintiff in Error.

St. Louis Court of Appeals.   Opinion Filed April 6, 1920.

1. **TRIAL PRACTICE: Demurrer to Evidence: Effect.** In considering defendant's demurrer to the evidence at the close of the entire case, not alone must plaintiff's evidence be taken as true and defendant's contradictory evidence as untrue, but plaintiff must be given the benefit of every favorable inference that can be fairly draw from the evidence.

2. **NEGLIGENCE: Automobiles: Collision: Personal Injuries: Evidence: Causal Connection Essential Between Negligence and Damage.** In an action for personal injuries resulting from an automobile collision, plaintiff's case *held* to fall within the requirements of the law as to the certainty of the evidence essential to establish a casual connection between alleged injuries and damage.

3. **TRIAL PRACTICE: Instructions: Variance Between Pleading and Proof: When Immaterial: Duty of Court.** In an action for personal injuries resulting from an automobile collision where the evidence was conflicting as to whether both colliding automobiles struck the one in which plaintiff was seated, it was proper to refuse an instruction based on a variance between the pleading and the proof under section 1846, Revised Statutes 1909, defendant having offered no affidavit as required by statute, and the variance was immaterial and not prejudicial, where the court, instead of ordering an amendment, instructed the jury in accordance with the evidence as provided by section 1847, Revised Statutes 1909.

4. **NEGLIGENCE:** Automobiles: Collision: Personal Injuries: Immaterial which of Colliding Cars Struck Other: Allegata and Probata. In an action for personal injuries resulting from an automobile collision where plaintiff's petition is based on certain specific acts of negligence of two defendants resulting in a collision between their automobiles, the force of which threw one of the cars against the car in which plaintiff was seated, it in no wise affects the liability of one of the defendants if its car did not actually strike the one in which plaintiff was seated inasmuch as the action was based solely upon the negligence of the two defendants in causing the collision.

5. **WITNESSES:** Personal Injuries: Leading and Suggestive Questions Improper. In an action for personal injuries resulting from an automobile collision, the question, "Now, I would ask if it (plaintiff's condition) was noticeable to the extent of causing comment among the other employees," was objectionable as not asking the witness to state any fact or facts which caused him to notice plaintiff's condition, and as leading and suggestive.

6. **APPELLATE PRACTICE:** Exclusion of Evidence not Materially Affecting Action Not Reversible Error. The rejection of a lead- and suggestive question as to plaintiff's physical condition being noticeable among other employees, if error, it is not ground for reversal in light of section 2082, Revised Statutes 1909, which provides that no judgment shall be reversed unless error was committed materially affecting the action.

7. **TRIAL PRACTICE:** Sustaining Objection to Question: Evidence Afterwards Secured: Not Error. In an action for personal injuries resulting from an automobile collision where a physician was asked if it was not a fact that he had never examined plaintiff's mouth at all until after the physician appointed by the court had examined him and made blood tests, etc., and an objection (interposed before the question had been completed) was sustained, the point that such ruling is error because by the question sought to fix the time of the physician's examination, is without merit, where counsel elicted that information immediately after the objection had been sustained from a question correctly framed.

8. **APPELLATE PRACTICE:** Admission of Evidence: General objections Insufficient. In an action for personal injuries resulting from an automobile collision where plaintiff, a minor, was asked, "Why didnt you tell your mother about this accident," and whereupon his counsel said, "We object to that, why he did not tell his mother," such objection failed to specify the ground therefor, and a general objection of this nature, although the ruling was adverse and an exception saved, does not present anything to the appellate court for review.

9. **EVIDENCE:** Witness Accused of Inconsistent Conduct: May Explain. In an action by a minor for personal injuries resulting from an automobile collision, his mother having testified that he did not tell her of the accident for four or five weeks thereafter, it was competent for the plaintiff, charged with inconsistent conduct, to explain that the reason why he did not tell his mother of his alleged injury at the time was that he was afraid to tell her because she had forbidden him to ride on automobiles.

Writ of Error to Circuit Court of the City of St. Louis.— *Hon. George H. Shields,* Judge.

AFFIRMED.

*Bryan, Williams & Cave* for plaintiff in error.

(1) Where a condition, under the evidence, may be due to either of two existing causes, accident or disease, for one only of which the defendant is liable, mere proof by the plaintiff that the one for which the defendant is liable is a possible cause is not sufficient, and before the plaintiff is entitled to have his cause submitted to the jury it is necessary that he go further and show with reasonable certainty that the cause for which the defendant is liable produced the condition. This the plaintiff here has failed to do. Williams v. Railroad, 176 Mo. App. 44; Young v. Railroad, 113 Mo. App. 636-41; Shore v. Bridge Co., 111 Mo. App. 278; Driskell v. Ins. Co., 117 Mo. App. 362; Goodes v. Order of United Commercial Travelers' Association, 174 Mo. App. 330; Warner v. Railroad, 178 Mo. 125; O'Connell v. Railroad, 149 Mo. App. 504; Milirons v. Railroad, 176 Mo. App. 42, 44. (2) The plaintiff's petition charged directly that the automobile of the defendant, Lafayette Motor Car Company, collided with the Bona car. The defendant's evidence showed that the auto of the Lafayette Motor Car Company did not so collide, but that the auto of the Herman Construction Company collided with the Bona car and caused the plaintiff to be thrown out. On this allegation and these facts this defendant was entitled to have the jury instructed that if its automobile did not collide with

the car in which the plainiff was riding the verdict must be for the defendant. This was a failure of proof, and the court erred in refusing to so instruct. Gibbs v. Dayton, 166 Mich. 263; Trout Brooks I. & F. Co. v. Hartford E. L. Co., 77 Conn. 338; Mucklinger v. Lambert, 76 N. J. Law, 813. (3) The court erred in sustaining an objection to the following question asked witness Armstrong: "Q. Now, I would ask you if it (the plaintiff's condition) was noticeable to the extent of causing comment among the other employees." This witness had testified that he had noticed certain peculiarities in the plaintiff's walk prior to May 5, 1917. Plaintiff's condition before that time was most material. It was important in determining the credit to be given to this witness' recollection to know whether any or what reason existed at the time to fix the facts in his memory. He should, therefore, have been allowed to state that the plaintiff's condition caused comment among the employees. Wigmore on Evidence, par. 826; Angel v. Rosenbury, 12 Mich. 24; Patton v. Lund, 114 Iowa, 204; Cole v. Ry. Co., 105 Mich. 549; Brown v. R. R., 130 N. W. 267; 17 Cyc. 784. (4) The court erred in sustaining an objection to the question (set out in the statement) asked Dr. Harman attempting to fix the time when he first examined the plaintiff's teeth. See cases cited under point 3, supra. (5) The court erred in permitting the plaintiff, over the objection of the defendant, to tell why he hadn't told his mother about the accident. For while a party may properly be permitted to testify to his own motive or intent whenever it is material to the issues to determine what such motive or intent was, such testimony is, of course, receivable only on the assumption that the intent or motive is a fact permissible to be proved under the substantive law of the case and where the intention of a party is not an issue in the case his undisclosed wishes, intent or motive are incompetent and immaterial. Wigmore on Evidence, par. 581; Jones on Evidence, par. 170; Abbott's Civil Trial Brief, p. 444, citing Leland v.

Converse, 181 Mass. 487; Weiss v. Morris Bros., 102 Iowa, 327, and Heffernen v. Neumond, 198 Mo. App. 685.

*Jas. A. Ryan* and *Kinealy & Kinealy* for defendant in error.

(1) In considering a demurrer to the evidence plaintiff's evidence must be taken as true, defendant's contradictory evidence as untrue and plaintiff given the benefit of every favorable inference that can be fairly drawn from the evidence. Stauffer v. Railroad, 243 Mo. 305; Williams v. Railway, 257 Mo. 87; Dawson v. Railroad, 197 Mo. App. 169. (2) Aside from the advisory testimony of doctors, if the evidence shows an injury followed by pain and uninterrupted steady progress from perfect health to physical incapacity the case is one for the jury. Shore v. Bridge Co., 111 Mo. App. 278; Fink v. Railroad, 161 Mo. App. 314; Sharp v. Railway, 213 Mo. 517; MacDonald v. Railroad. 219 Mo. 468; DeMaet v. Storage Co., 231 Mo. 615. (3) The rule that where defendant is liable if the injury proceeds from a certain cause and the evidence leaves it a matter of speculation as to whether it proceeded from that or some other cause, the plaintiff cannot recover, has no application where the matter resolves itself into a question of credibility between plaintiff's witnesses and those for the defendant. Rinehart v. Railway, 204 Mo. 269; Yongue v. Railroad, 133 Mo. App. 141. (4) Where there is an immaterial variance between the pleading and the proof, the court may instruct on the evidence as introduced or may order an amendment of the pleading. 1 Rev. St. 1909, sec. 1847; Thornton v. Smelting Co., 178 Mo. App. 38; Perry v. Van Matre. 176 Mo. App. 100; Lord v. Railroad. 155 Mo. App. 175; Hensler v. Stix, 113 Mo. App. 162. (5) No variance is material unless the opposite party makes it so by filing an affidavit showing he has been misled to his prejudice. 1 Rev. St. 1909, sec. 1846; Fisher & Co. v. Realty Co.. 159 Mo. 562. (6) Aside from the failure of the defendant to file an affidavit, the variance in this case was utterly

trivial, immaterial and without influence on the trial. Murphy v. Wilson, 44 Mo. 313; Allred v. Bray, 41 Mo. 484; Ridenhour v. Railway, 102 Mo. 270; State v. Orrick, 106 Mo. 111; Crawford v. Stockyards Co., 215 Mo. 394; Goode v. Coal Co., 179 Mo. App. 207; Perry v. Van Matre, 176 Mo. App. 100; Gardner v. Railway, 167 Mo. App. 605; Lord v. Railroad, 155 Mo. App. 175; Hensler v. Stix, 113 Mo. App. 162. (7) Counsel's interpretation of a witness's testimony cannot be substituted for an abstract thereof. Nolan v. Johns, 126 Mo. 159; Fronk v. Fronk, 159 Mo. App. 543. (8) A judgment will not be reversed because of the exclusion of merely cumulative testimony. Bank v. Tuttle, 144 Mo. App. 294; Gideonson v. Railway, 129 Mo. 392. (9) General objections to evidence, when overruled, present nothing for review. Springfield v. Owen, 262 Mo. 92; Gayle v. Mo. Car. & F. Co., 127 Mo. 477; Primm v. Raboteau, 56 Mo. 407. (10) A party or witness charged with inconsistent conduct may always explain it. 16 Cyc. 956, tit. Evidence; 1 Greenl. Ev. (16 Ed.) 325, sec. 195a.; 1 Wigmore on Ev., 362, sec. 281; 2 Wigmore on Ev., 1089, sec. 952; Macy v. Railroad, 35 Minn. 200; State v. Mallon, 75 Mo. 355; State v. Harris, 232 Mo. 317; State v. Reed, 89 Mo. 168; State v. Marcks, 140 Mo. 656; Redmond v. Piersol, 39 Mo. App. 173; Carder v. Primm, 52 Mo. App. 102.

STATEMENT.—This controversy is here upon writ of error to the Circuit Court of the City of St. Louis, plaintiff below (defendant in error here) having obtained a judgment in the sum of $7500 against the defendant *nisi* (plaintiff in error here).

Plaintiff on May 5, 1917 (then 17 years old) while riding on an automobile, seated next to the chauffeur, and when near 39th street and McRee avenue, in the city of St. Louis, an automobile of the plaintiff in error, Lafayette Motor Car Company, and an automobile of the Trinidad Asphalt Company and Heman Construction Company, who were also defendants below, collided with each other through the alleged negligence of the drivers

of said automobiles, and by reason of the force and impact of such collision the automobile of the Lafayette Motor Car Company was thrown against the automobile in which plaintiff was riding and plaintiff was violently thrown from the automobile to the street, plaintiff falling on his back against the curb of the street, and suffered alleged injuries which at the time of the trial amounted to a general arthritis involving his ankles, knees, hip joints, illiosocral joints and his back bone, with the re sult that for a number of months prior to and at the time of the trial plaintiff was bedridden, not being able to bend any of his joints from his waist down.

Each of the defendants filed a general denial and at the trial the jury found in favor of the defendants Heman Construction Company and Trinidad Asphalt Company, and returned a verdict against the defendant, Lafayette Motor Car Company, which in due course sued out a writ of error and is the plaintiff in error here.

## OPINION.

BECKER, J. (after stating the facts as above).—The main point relied upon by plaintiff in error is that there was no evidence of the plaintiff having been injured in the collision and that therefore the court erred in overruling defendant's demurrers offered at the close of plaintiff's case and again at the close of the whole case. Counsels' argument in support of this contention is that according to all the evidence plaintiff's arthritis was due to a germ condition and that this condition could be the result of disease; further that since germs could not be introduced into the system by trauma excepting through a break in the skin, and no proof having been adduced that plaintiff's skin was broken at the time of his fall due to the accident, that the most favorable view that could be taken of the testimony was that plaintiff's condition could possibly have been caused by a fall or could possibly have been due to disease, and that therefore the case falls within the rule that where a condition under

the evidence may be due to either of two existing causes (e. g. accident or disease) for one only of which the defendant is liable, simple proof by the plaintiff that the cause for which the defendant is liable is a possible cause is not sufficient, and in such a case, before the plaintiff is entitled to have his cause submitted to the jury, it is necessary that he go further and show with reasonable certainty that the cause for which the defendant is liable produced the condition complained of.

Our reading of the record, however, brings us to a conclusion contra to that argued by learned counsel for plaintiff in error. There was testimony adduced on behalf of plaintiff tending strongly to prove that plaintiff had been strong and healthy his entire life up to the time that he met with the alleged accident; that he had never had any illness but had always been a strong, robust boy. That the condition of his teeth had been good; that on one occasion he had a tooth pulled, some six or seven years before the date of the trial, but outside of that had never suffered with his teeth in any manner. While under all the testimony the mere visible signs of plaintiff's injury at the time were not great, yet "it would be dealing only with the surface of things to stop only with that visible sign."

According to plaintiff's own testimony, after the collision, the impact of which threw one or both of the colliding automobiles against the automobile, on the seat of which plaintiff was riding, he was knocked off the seat into the street and that he fell, "right against the curb . . . right on the base of my spine with my hands out;" that the sensation he felt was like, "you hit your elbow bone, on my spine—up my spine." And asked as to whether he had told the police officer who was there that he had been hurt in the accident, he replied that he did not remember it, that, "he had told some people about this pain coming up my back," that after the car was towed in he walked home, "a couple of blocks," and that his back hurt him all the time and kept on hurting him. The day after he was injured he tried to play ball but

Conley v. Motor Car Co.

was unable to do so; that he told his friends, Roy and Jim Drowney, and Albert Causland of the accident at the time it occurred; that on the Monday after the accident he had returned to work and had worked from May up to the beginning of August, but because of his injuries he stayed away from work one or two days a week. He further testified as to the pain in his back: "I noticed it all the time, I did; it kept getting worse and worse, and I coudn't use my back at all. . . . . I had to use a cane, and just dragging my leg." He went to various doctors but he kept, "getting worse and worse," until finally for the two years prior to the trial he had been confined permanently to his bed and was unable to move from his hips down.

Plaintiff's mother tesified that plaintiff had been in excellent health up to the time he met with his injuries and that he was always a strong, hearty boy, but that three or four days after the accident she noticed a change in the boy; that he was commencing to stoop and acted as though it hurt him to walk; that this condition kept growing worse all the time and that she then took him to Dr. Kollme; that the doctor prescribed for him but the boy became worse. She then took him for a visit or two to Dr. Heine Marks, who prescribed for him, and then she put the boy under the care of Dr. Hoffmann. The boy during this period of time, up to September or October, 1917, was still able to walk around, though with great difficulty. Plaintiff's mother further testified that about a month after the accident she examined the boy and found, at the base of his spine, a lump "about the size of an egg, a good sized egg," right at the lower part of the spine; that she used alcohol and different prescriptions, that the doctors gave her, upon his spine and finally the lump went away; that the boy's condition kept gradually getting worse until it became necessary for him to use a cane and crutch. It finally got so that he was unable to leave the house to visit the doctor and Dr. Hoffman being unable to visit the boy at his home, she called in Dr. Kleinsfelder who had the boy removed to

a sanitarium for an examination and treatment. Later on the boy's condition failing to improve she called in Dr. Harman who continued to treat him up to the time of the trial. The boy kept getting worse and for many months prior to the trial had been confined to his bed. The mother further testified that the boy did not tell her that he had met with an accident until some four or five weeks after its occurrence and then only as a result of the visit of an attorney who came out to take the boy's statement or deposition with reference to the facts concerning the collision between the several machines.

Thus far then, the record, for the purpose of considering defendant's demurrer, shows plaintiff to have enjoyed excellent health continuously up to the time of the accident; that he was a strong, robust lad, but that immediately after the date of the accident the boy began to ail and was never a well boy again; that his condition became steadily worse until he was finally confined to his bed and that for two years next prior to the trial had been absolutely bedridden, unable to move any of his joints below his waist line. Then there is the testimony of the several physicians who treated the boy, and also that of the physician who examined him by order of the court.

Dr. M. F. Harman was a witness for plaintiff. He testified that he began treating plaintiff on February 28, 1918; that he made an examination of him at the time he took the case over from Dr. Kleinsfelder; that he found plaintiff at the time with his entire pelvic region in a plaster cast, which he removed, and found plaintiff unable to move either hip or flex his limbs in any act or in any manner whatsoever, and stated that an injury to the spine, "could more than likely cause a condition of that kind;" that he termed the condition of the plaintiff as a "complete ankylosis" a general arthritis of both the hip and knee joints, and on cross-examination stated that, *"the cause of the (plaintiff's) condition I attributed to an injury which he had received prior to the time I had seen him."* "Q. You mean you just attributed it to that without any further examination at all"? "A.

There were no other symptoms." "Q. I say you made no further examination than what you have already disclosed and *yet you attribute this to an injury which the boy received"? "A. He had no other symptons to bring on a condition of that kind that I could find."* . . . *"Q. But this condition could have been caused by disease, could it not"? "A. I would not say that his con dition could, some cases could have been caused by disease."* He further testified that while a condition such as that of plaintiff could be caused by disease, that he had, however, in plaintiff found no disease to which his condition could be attributed. He subsequently stated that he had made "several urinal analyses and every one of them showed a normal condition." And further that the boy had no rheumatic or inflammatory condition that might have caused it, nor had the boy had any symptons of a venereal or syphilitic condition, and that, "when I first treated him I examined his tongue and mouth thoroughly and he had absolutely no sign of any trouble with his mouth in an way, shape or form. . . I examined him thorough enough to find out if there was any plorrhea or inflammation there at the beginning and found there was none." And at another point in his cross-examination he stated: *"Well, his condition from all the symtoms that he gave showed that it was more of a condition of an injury to his spine than any other part of the body because he had no symptoms of any other trouble."*

Dr. Alex Horwitz, a witness for plaintiff, made an examination of the plaintiff in April, 1919, and on cross-examination was asked the question: "From your examination of the boy would you say in all reasonable probabilities that the condition you found in him was due to disease or was due to an accident"? His reply was: "I would explain it this way. That either one of two things—that he had a severe accident and inflammation set in and then spread to the other joints; or that he had some beginning, or some quiet or latent focus or quiescent condition in his spine, and that was broken up by this accident and lighted up and spread itself."

Dr. Edward Scheu, a witness for plaintiff, stated that he was a dentist; that in the middle of January, 1919, he had examined plaintiff's mouth and teeth and found them in good condition excepting that the plaintiff had a few roots that were rather loose in the sockets; that he extracted these roots; he found no inflammation present though he found a little pus present but no pus sacs. He further testified that according to his experience, "where people have focal infection that would cause rheumatic conditions, but that is principally in people in the middle part of life, or advanced age; not usually in young people, I have never seen it."

While it is true that Dr. Henry J. Scherck who, under an order of the court, examined plaintiff in November, 1918, a year and a half after the date of the accident, testified he found some of plaintiff's teeth in bad condition and that on pressure pus exuded from the side of the bicuspid root, and found the tonsils on the left side swollen and inflamed, and after detailing at length the manner and character of the several examinations he had made, stated: "After going over this boy, I was of the opinion, and it is my best judgment, that the boy is suffering from an infection of the various joints that I have specified; that this infection in the joints comes from some focus, or some point of infection, and it is my opinion that inasmuch as there was a reasonable explanation for this infection coming from a definite abscess formation about the teeth, that it was a logical conclusion from my standpoint, my opinion, that it was the cause of his trouble; I would say this, that it is not absolute, but it is the best judgment I have in the case."

On cross-examination Dr. Scherck testified, in answer to an inquiry as to whether a fall such as plaintiff testified he had had, could have contributed to the boy's condition at the time of the trial if at the date of the injury, "the pus germ had already spread from his teeth to portions of his spine to some extent," he answered: "Here is the point; if it was in his teeth and there was nothing in his spine, the blow probably could not have

done any harm to it, because there was no blow upon the teeth. If the infection was already in his spine and he got a blow it might have temporarily intensified the infection, just as if you have a boil and you hit it it makes it hurt.''

Dr. Frank R. Fry, a specialist on diseases of the nerves, had examined plaintiff prior to the trial and he testified that in his opinion the boy's condition could not have been caused by an accident alone.

In considering defendant's demurrer's to the evidence at the close of the entire case, not alone must plaintiff's evidence be taken as true and defendant's contradictory evidence as untrue, but plaintiff must be given the benefit of every favorable inference that can be fairly drawn from the evidence. Furthermore, as was stated in MacDonald v. St. Ry. Co., 219 Mo. 468, l. c. 481, 118 S. W. 78: "It must be borne in mind, too, that doctors' theories under oath on the witness stand are merely advisory in character. Juries can take or leave that advise on the condition only that it seems reasonable or not to them; and because doctors disagree, it is not valid reasoning to say that juries should also disagree, or should take the advice of one set as against that of another, or should throw to the winds their common sense and, with minds littered up with conflicting medical advice, be unable to come to any agreement whatever, even as sailors (tossed to and fro by contrary winds) reach no harbor.''

Does then the rule sought to be invoked by plaintiff in error, defendant below, become applicable here in light of the record? Can it be said that the evidence shows that plaintiff's condition resulted from either of two causes for one of which the defendant is liable, and for the other of which he is not liable, and that plaintiff has failed to offer sufficient evidence to enable the jury to trace the causal connection between defendant's negligence and plaintiff's injury? We think not.

A number of witnesses testified to the effect that plaintiff had always enjoyed good health and was a

strong, robust boy up to the date of the accident; that after the date upon which plaintiff met with his injury he suffered pain continuously and uninterruptedly; that this condition went from bad to worse until he was physically incapacitated and absolutely bedridden. Added to this we have Dr. Harman's testimony that in his opinion the plaintiff's condition was the result of an injury and that he found no indication of the boy's condition being due to disease. In light of the testimony we are of the opinion, and so hold, that the rule sought to be invoked has no application here. As was stated in Fink v. Ry. Co., 161 Mo. App. 314, l. c. 327, 143 S. W. 568, "the sufficiency of the evidence and the weight thereof and the credibility of the witnesses by which their conclusions are to be reached is left entirely with the jury, and it is for them to determine whether the evidence was sufficient to show the liability of the defendant as charged in the petition. In an action for damages on account of negligence, if the evidence is susceptible of two inferences, one exculpating and the other inculpating the defendant, the question is one of fact for the jury. But the appellate court in determining whether the evidence is sufficient to withstand a demurrer is required to protect the litigant's constitutional right of trial by jury, and in disposing of a demurrer to the evidence the unbending and cardinal rule hedging about such right of trial by jury is applied that the defendant's evidence so far as it contradicts the plaintiff's evidence fills no office; that the plaintiff is entitled to have his evidence taken as true and the contradicting evidence of the defendant taken as untrue, and he is allowed every reasonable and favorable inference naturally deducible from his own evidence, or the uncontradicted evidence, and if, when so considered, the testimony makes a prima-facie case, the demurrer should be overruled. [Phelan v. Paving Co., 227 Mo. l. c. 704, 127 S. W. 318; Hollweg v. Bell Tel. Co., 195 Mo. l. c. 165, 93 S. W. 262; State v. Baldwin, 214 Mo. l. c. 308, 113 S. W. 1123; Mockowik v. Ry. Co., 196 Mo. 550, 94 S. W. 256.]"

In light of the record we are of the opinion that plaintiff's case falls within the requirements of the law as to the certainty of the evidence essential to establish a causal connection between alleged negligence and damage. It results, and we so hold, that the demurrers were not well taken and the court committed no error in overruling them.

## II.

It is next urged that the learned trial court erred in refusing to give the following instruction:

"The court instructs the jury that if you find and believe from the evidence that the automobile of the defendant, Lafayette Motor Car Company, did not collide with the automobile in which plaintiff was riding, then your verdict must be for the defendant, Lafayette Motor Car Company."

Plaintiff's petition alleges that the automobiles of the defendant Lafayette Motor Car Company, and the defendant Heman Construction Company collided with each other, "and that by reason of such collision and the force and impact thereof, the automobile of the Lafayette Motor Car Company was thrown against the automobile in which the plaintiff was then riding as aforesaid, whereby plaintiff was violently thrown from the said automobile in which he was riding, to the ground," as a result of which he was injured. Plaintiff's evidence tended to show that both automobiles came in contact with the automobile in which he was riding, while defendant's testimony tended to show that the automobile of the Lafayette Motor Car Company did not collide with the car in which plaintiff was riding. Plaintiff in error, therefore, contends that the offered instruction was proper because unless plaintiff showed that it was the machine of the Lafayette Motor Car Company, as alleged in the petition, which struck the automobile in which plaintiff was riding, there would be such a variance as would prevent plaintiff from recovering.

Section 1847, Revised Statutes of Missouri, 1909, provides that, "when the variance between the allegation in the pleading and the proof is not material, the court may direct the facts to be found according to the evidence, or may order an immediate amendment without costs." In the cause at bar the court, instead of ordering an amendment instructed the jury in accordance with the evidence.

Under section 1846, Revised Statutes of Missouri, 1909, it is provided, "no variance between the allegation in the pleading and the proof shall be deemed material," unless it has misled the party to his prejudice and that fact be shown by affidavit on the trial. Defendant offered no affidavit as required by statute, but aside from this the variance was, as a matter of fact, of an immaterial character; it had no bearing upon the specific acts of negligence alleged against the defendant and it in no way affected defendant's liability or defense.

Plaintiff's petition is based on certain specific acts of negligence of the driver of the Lafayette Motor Car Company's car, and of the driver of the Heman Construction Company's car, and that by reason thereof two cars collided and the force of the collision threw the said cars against the car in which plaintiff was seated, and the fact, if it is a fact, that the Heman Construction Company's car alone came in contact with the machine in which plaintiff was seated, and that the Lafayette Motor Car Company's car did not actually strike the latter, in no wise effects the liability of the plaintiff in error, which was based solely upon the negligence in causing the collision between the cars of the two companies. [Murphy v. Wilson, 44 Mo. 313; Allred v. Bray, 41 Mo. 484, l. c. 489.]

### III.

As to the assignment of error that the court erred in sustaining an objection to a question asked a witness as follows: "Now, I would ask if it (plaintiff's condition)

was noticeable to the extent of causing comment among the other employees?" It will be noted that the question does not ask the witness to state any fact or facts which caused him to notice plaintiff's condition. The question is also leading and suggestive. The court properly sustained the objection. But even if the sustaining of the objection had been error it could not be ground for reversal in light of section 2082, Revised Statutes of Missouri, 1909, which provides that no judgment shall be reversed unless error was committed materially affecting the action. The record discloses that defendant called four employees of the said company and each of the witnesses testified as to whether or not he had observed any peculiarity in plaintiff's walk.

## IV.

It is contended that the court erred in sustaining the objection to a question asked the witness, Dr. Harman. The question propounded to the witness is as follows: "Now, isn't it a fact, doctor, that you never examined this boy's mouth at all until after the doctor appointed by the court had examined this boy and taken him to the hospital and kept him there and had blood tests made and pathological tests made and X-rays taken of the boy's entire spine and X-rays taken of every tooth in his head and the doctor appointed by the court said"—

Here plaintiff's counsel interrupted and objected to defendant's counsel stating what the doctor said. This objection was sustained, the court saying that what the doctor said was incompetent but that the witness might answer the rest of the question.

Defendant's counsel refused to concur in this ruling or to accept an answer from the witness as to the balance of the question. It is now claimed that this ruling of the court was error.

Plaintiff in error contends that counsel should have been permitted to finish the question by adding what the doctor appointed by the court had found, because that was

necessary to fix the time of the examination by Dr. Harman. This point is without merit. If the object of the question was to fix the time when the witness examined the plaintiff's teeth, counsel got that information immediately after the objection had been sustained when he framed the question correctly as follows: "Isn't it a fact that you never made any examination of this boy's mouth until your attention had been called to the fact that an examination had been made by a doctor appointed by the court?"

## V.

Plaintiff's mother, while on the stand during the cross-examination, was questioned as to whether plaintiff had immediately on the date of the accident complained of any injury, and she testified that the boy did not tell her of the accident until some four or five weeks thereafter. Later on, during the course of the trial, when the plaintiff was on the stand, he was asked the question: "Why didn't you tell your mother about this accident?" "We object to that, why he did not tell his mother." The court. "I think the question is proper. The objection will be overruled." The objection failed to specify the ground therefor and a general objection of this nature, although the ruling was adverse below and an exception saved to the action of the court, does not present anything to this court for review. [City of Springfield v. Owen, 262 Mo. 92, l. c. 104, 170 S. W. 1118. See, also. State ex rel. West v. Diemer, 255 Mo. 336, 164 S. W. 517, and cases there cited.]

In any event the ruling of the court on the matter was correct under the facts in this case, for a party charged with inconsistent conduct may explain it. [16 Cyc. 956.] "The party may, of course, explain away the apparent significance of his conduct." [1 Greenleaf, Ev. (16 Ed.), 325, sec. 195a; 1 Wigmore, Ev. 362, sec. 281.] It was competent, therefore, in this case, for the plaintiff to explain, as he was permitted to do, that the reason why he did not tell his mother of his alleged in-

jury at the time, was that he was afraid to tell her because she had forbidden him to ride on automobiles.

Having thus disposed of the assignments of error raised by plaintiff in error and it being admitted that the amount of the verdict is in fact less that what plaintiff should be entitled to receive, if in point of fact he is entitled to a verdict at all, the judgment should be and is hereby affirmed.

*Reynolds, P. J.,* and *Allen, J.,* concur.