John HULAHAN, Plaintiff-Respondent,

v.

John SHEEHAN and Paul Pelker, Individually, and as a Class Representing Laborer's International Union of North America, No. 42, Defendants-Appellants.

No. 35484.

Missouri Court of Appeals, St. Louis District.

March 18, 1975.

Rehearing Denied April 14, 1975.

Barnard, Baer, Lee Timm & McDaniel, Richard O. Funsch, St. Louis, for defendants-appellants.

Ackerman, Schiller & Schwartz, Theodore F. Schwartz, Clayton, for plaintiff-respondent.

KELLY, Judge.

This is an appeal from a judgment of the Circuit Court of the City of St. Louis entered on a jury verdict awarding plaintiff-respondent $20,000.00 for injuries allegedly sustained when he slipped and fell on the steps of the entrance to the defendants-appellants' Union Hall situated at 3710 Enright in the City of St. Louis. Plaintiff, a member of the Union, brought suit against John Sheehan, President, and Paul Pelker, business representative, individually and as representatives of a class constituting the entire membership of the Laborer's International Union of North America, Local Union No. 42. At the close of the plaintiff's evidence the motion of Mr. Sheehan and Mr. Pelker for a directed verdict was sustained as to them in their individual capacities but denied with respect to them as representatives of the class. No appeal has been taken by the plaintiff to this court from that ruling of the trial court.

Plaintiff's petition alleged that the defendant was an unincorporated labor organization whose membership consisted of Mr. Sheehan, president, Paul Pelker, business representative; that the named individuals are members of the Union and were acting for and on behalf and representing the Union; that there are also members of the Union, too numerous to bring them before the court, and that the named individual defendants will adequately and fairly ensure adequate representation of all of the members of the Union; that the cause of action is brought against the named defendants, individually, and as officers, agents and members of the Union and as representatives of a class as to which there is a common question of law and fact affecting the several rights in which a com-

mon relief was sought; that on December 23, 1969, the defendants owned, maintained and controlled the premises at 3710 Enright in the City of St. Louis, Missouri, which they used as a Union Hall, and that there were certain concrete steps on the front of said Union Hall building; that on the date aforesaid the steps and common areaway fronting the said building were not in reasonably safe condition *for the public,* and more particularly for the plaintiff, in that the defendants' carelessness and negligence caused and permitted a patch of ice to remain on the area fronting the building for a long period of time, which ice was formed from rain water, snow and moisture falling thereon from the elements; that the defendants undertook to remove said ice and moisture that had fallen on the entire areaway thereof, but carelessly and negligently failed to remove the patch of ice and by reason thereof the said area was not reasonably safe; that the defendants knew, or by use of ordinary care should have known, of the existence of this condition, but that defendants failed to use ordinary care to remedy this condition and to remove the ice and slippery condition on said areaway fronting its building, and that on said date as the plaintiff was exiting from defendants' said premises as a direct result of the carelessness and negligence of the defendants he was caused to slip and fall on the ice and as a direct result thereof sustained injuries and damages. Plaintiff thereafter alleged his injuries and damages which are not in issue on this appeal and shall therefore not be set forth in this opinion.

Defendants' Answer was a general denial of each and every allegation set out in plaintiff's petition and by way of an affirmative defense they alleged contributory negligence on the part of the plaintiff.

With the pleadings thus framed, the cause came on for trial and at the conclusion of all of the evidence the plaintiff submitted his case to the jury in an MAI No. 22.04 modified instruction for use in a "sidewalk defect" case as follows:

"Your verdict must be for plaintiff if you believe:

First, defendants undertook to remove snow and ice off of the steps of the common areaway fronting the defendants' building, that is (sic) doing so permitted a patch of snow and ice to remain on said steps, and as a result the said steps were not reasonably safe for the *public;* and

Second, defendants knew or by using ordinary care should have known of this existing condition; and

Third, defendants failed to use ordinary care to remedy it; and

Fourth, as a direct result of such failure, plaintiff was injured, unless you believe plaintiff is not entitled to recover by reason of Instruction No. 4." (Emphasis supplied).

Instruction No. 4 was defendants' contributory negligence instruction submitting plaintiff's failure to keep a careful look out.

Defendants' first point on appeal is that the trial court erred in overruling the defendant's motion for a directed verdict at the close of all of the evidence because: (1) the plaintiff failed to prove that the defendants cleared the steps in a negligent manner or in any way increased the natural hazard of the ice or snow and (2) the evidence failed to establish that a patch of ice was the direct and proximate cause of plaintiff's fall because his evidence as to the cause of his fall was vague and insubstantial and submission of that issue invited the jury to speculate and conjecture.

Viewing the evidence in a light most favorable to the plaintiff and affording him all favorable inferences which might properly be drawn from the evidence by the jury, Zipp v. Gasens Drug Store, Inc., 449 S.W.2d 612, 616 (Mo.1970), the jury could have made the following findings of fact. The defendants owned a Union Hall at 3710

Enright Avenue when the plaintiff, a member of the Union, had occasion to go to the Union Hall on December 23, 1970, at approximately 12:30 p. m. on some "business." The previous night and during the day there was a general condition of sleet and snow throughout the metropolitan St. Louis area of which the plaintiff was well aware. At about 8:00 a. m. Milton Haefner, a fellow union member, was directed by Paul Pelker, a business representative of the Union, to clean the stone steps from the public sidewalk to an entrance into the Union Hall of the ice and snow which had accumulated there. Mr. Haefner, broom in hand, swept a path, estimated to be between 4 to 10 feet in width, along the west side of the five stone steps leading to the Union Hall getting most of the snow off of the area of the steps when he swept. In all, the steps were about 30 feet in length, and snow was piled up along both sides of the pathway Mr. Haefner had swept. When he finished sweeping Mr. Haefner put some fertilizer—a chloride—on the swept portion of the steps for the purpose of melting any snow or ice remaining thereon. He did not use salt because they had none at the Union Hall. He knew that if the temperature rose the fertilizer would cause the ice and snow on that portion of the steps he had swept to melt and if the temperature then went down again below the freezing point of the water and fertilizer mixture, ice would again form on the steps. During the day Mr. Haefner returned to look at the steps a couple of times and discovered that the wind, which had been blowing hard, had drifted some of the snow back on the steps and quite a bit of the snow had blown back on the pathway of the steps he had swept. There is no evidence as to the exact times prior to the occurrence here in issue that Mr. Haefner reinspected the steps. In defendants' case their counsel developed on direct examination of Mr. Haefner, a member of the Union and of the class of defendants, that Tony Pelker or one of the business agents had the authority to tell Mr. Haefner to clean the steps of snow and that Paul Pelker was an officer of the Union.

On cross-examination of Mr. Haefner it was also developed, without objection, that Mr. Haefner cleaned the steps at the direction of Paul or Tony Pelker, that both of these men were officers of the Union and had the authority to tell him to do work around the Union Hall. The plaintiff arrived at the Union Hall in a cab. The weather was bad because it had been sleeting and snowing but he could not recall whether it was doing so when he arrived at the Union Hall. He ascended the steps by means of the path swept by Mr. Haefner. The steps looked like they were cleaned off and looked all right to him for him to walk on and where the path had been swept it was not then covered with snow. His business discussion with Mr. Pelker consumed about one hour. Sometime during this conversation his wife and son came to the Union Hall to get him and take him home. Mrs. Hulahan and the son entered the Union Hall by way of the same pathway the plaintiff had, and although she noticed the piles of snow at each side of the pathway she ascended the steps on a path wide enough to walk on without being conscious of any accumulation of snow or sleet thereon at that time. When plaintiff and Mr. Pelker concluded their "business" discussion, the Hulahan family prepared to leave for their home. Mrs. Hulahan and the boy preceded the plaintiff out of the Union Hall and onto the steps. Plaintiff and Mr. Pelker followed and continued their conversation as they proceeded down the hallway of the Union Hall until they came out the entrance of the Union Hall. Plaintiff walked to the steps and while in the process of so doing he and Mr. Pelker were talking. Prior to starting down the steps the plaintiff looked at them and they looked all right to him. "They looked good enough to come up and they looked good enough for me to go down." The next thing he knew his feet went out from under him and he fell as he started stepping down to the first step. He landed on his back and slid down to the bottom of the steps. He described the occurrence as almost like a somersault—his feet went out from underneath

him and into the air. He did not see what had caused him to fall. Mrs. Hulahan and the boy were a couple of steps below him at the time he fell and she did not see what caused him to fall, but heard him groan and when she turned around she observed him lying on his back almost at the very bottom of the steps, with his head and back at the third or fourth step and part of his body on the landing. Mr. Pelker testified that he walked as far as to the outside door of the Union Hall with the Hulahans and observed Mrs. Hulahan and the boy walk down the steps ahead of the plaintiff. Mr. Pelker, who was at that time approximately five feet behind the plaintiff, testified that the plaintiff bade him goodbye, started to walk down the steps and all of a sudden "he was lying down." He did not see the plaintiff slip but did see him fall after he had stepped on either the first or second step from the top. The snow had been cleaned from these two steps, according to Mr. Pelker, but he did not know what the plaintiff had slipped on nor did he, after plaintiff fell, have occasion to see what might have caused plaintiff to slip and fall. He did, however, see patches of ice in the immediate area where the plaintiff slipped and fell. On cross-examination Mr. Haefner testified that he got practically all of the snow off when he swept the pathway down the steps, but: "After all, with fresh snow like that and with tracks on it, you have to leave a little bit."

Defendants argue in this court that the only theory which would permit the plaintiff to recover is the negligent removal of snow and ice from the steps and that his evidence, taken in its most favorable light, did not give rise to any inference that the defendants were negligent in this respect. In support of their position they cite Woodley v. Bush, 272 S.W.2d 833 (Mo.App. 1954), Krause v. Laverne Park Ass'n., 240 S.W.2d 724 (Mo.App.1951) and Root v. Henry, 395 S.W.2d 280 (Mo.App.1965). Plaintiff takes the position that the defendants have misconstrued his theory of the case, that he has no quarrel with cases cited by the defendants but that they do not apply here. His theory is that the defendants attempted to clear the steps of ice so that they thereby led persons using the steps, and in particular the plaintiff, to believe that the steps were reasonably safe for normal use when in fact the steps contained patches of ice and snow and were thereby dangerous. Plaintiff cites no authorities to support his position in this court. He is satisfied to distinguish the authorities cited by the defendants.

■■ In an action to recover damages for personal injuries resulting from negligence, plaintiff must produce evidence that the defendant was guilty of negligence and that such negligence directly contributed to cause the injuries for which he seeks compensation before he is entitled to a judgment. Luettecke v. City of St. Louis, 346 Mo. 168, 140 S.W.2d 45, 49[8] (1940). "Negligence," as that term was used in Luettecke, means "actionable negligence," viz., the existence of a duty on the part of the defendant to protect the plaintiff from injury; the failure of the defendant to meet that duty; and injury to the plaintiff from the defendant's failure to perform that duty. Stevens v. Wettereau Foods, Inc., 501 S.W.2d 494, 498[7] (Mo.App.1973).

■ The parties tried this case in the trial court on the theory that the plaintiff was a member of the public when he slipped and fell on the steps of the Union Hall. Plaintiff submitted his case to the jury on that theory and defendants have not at any time contested this status. In reviewing this case we will review it on that basis since we may not review a case upon a theory different from that upon which it was tried nisi. Herrick Motor Co. v. Fischer Oldsmobile Co., 421 S.W.2d 58, 63[5] (Mo.App.1967).

■ A member of the public is an invitee just as is a business visitor. Restatement (Second) of Torts, Sec. 332 (1965). While a landowner is not the insurer of the safety of the premises, where

he invites the public to use said premises he must exercise ordinary care to keep the premises in a reasonably safe condition. In Evans v. Sears, Roebuck & Co., 104 S.W.2d 1035 (1937) this court held that an invitation to enter premises carries with it the duty towards the persons invited to provide reasonably safe means of ingress and egress, and where the invitation is to a particular part of the premises, there is a duty to maintain the approaches thereto in a reasonably safe condition. Again in Corley v. Andrews, 349 S.W.2d 395, this court, following Evans, supra, 1. c. 398[1], said:

"A landowner is not the insurer of the safety of his premises, but where he invites the public to use said premises, he must exercise ordinary care to keep the premises in a reasonably safe condition."

In Corley, supra, a guest at a motel slipped on some ice on a sidewalk between his cabin and the restaurant operated in conjunction with the motel after an agent of the motel operators had spread salt upon the sidewalk to melt some ice and then returned fifteen minutes later and swept off the sidewalk the ice which had melted. The salting of the sidewalk occurred at about 5:00 a. m.; the sweeping of the sidewalk 10 to 15 minutes later; and plaintiff slipped and fell sometime between 6:30 and 6:45 a. m. Under this evidence it was held that the question as to whether the motel and restaurant owners breached their duty to the plaintiff to use ordinary care to keep the sidewalk between the motel and the restaurant portion of their premises in a reasonably safe condition by removal of the ice and snow was a jury question.

■ Woodley v. Bush, supra, was a landlord-tenant case which held that the landlord is not held liable to a tenant for injuries caused by a natural accumulation of ice and snow general to the community. It never reached the issue with respect to the duty of the landlord when he assumes the task of cleaning the walks. Krause v.

Laverne Park Ass'n, supra, involved a situation where a patron of a restaurant fell on a public sidewalk. That case was decided on the grounds that there was no evidence that the agents of the defendant had done any chopping of any sort at the place on the public sidewalk where the plaintiff fell. Root v. Henry, supra, was also a landlord-tenant case which was decided on the refusal of this court to extend the doctrine of liability for negligent repair by a landlord to the cleaning or otherwise making icy sidewalks passable, which would in effect make him the guarantor of the safety of the person using the walk when it was obvious that the best of efforts may fail to remove all slickness or patches of ice upon which the tenant might slip and fall. The Missouri Court of Appeals, Springfield District, in O'Connell v. Roper Electric Company, Inc., 498 S.W.2d 847, 851 (1973) fended-off the contentions of the defendant there that the owner or occupier of land abutting a public right-of-way had no duty to use reasonable care to keep the abutting right-of-way clear of ice and snow and that the principles found in landlord and tenant cases should govern any duty owed the plaintiff. The court, 1. c. 851, said:

"We have no quarrel with the rules of law enunciated in such cases but deem such rules do not apply to the instant case because they do not apply to the liability of an abutting property owner or occupant for an injury sustained on that part of a public right-of-way which the abutting owner or occupier makes a special use thereof for his own benefit and convenience."

We conclude that the principles of Evans v. Sears, Roebuck & Co., supra, and Corley v. Andrews, supra, are controlling and so hold.

Defendants, however, further contend that the evidence failed to establish that a patch of ice was the direct and proximate cause of plaintiff's fall and was so vague and "insubstantial" that the submission of this issue to the jury invited the jury to

speculate and conjecture as to the cause of the plaintiff's fall. They argue that the plaintiff's testimony was that he did not know what caused him to slip and fall, or whether he fell on the first or second step; that Mr. Pelker did not know what caused the plaintiff to slip.

Defendants do admit that the plaintiff testified that he slipped as he was going to take the first step. Mr. Pelker testified that after the plaintiff slipped and fell down the steps he observed patches of ice and snow on the first and second steps in the area where the plaintiff fell. We conclude that in the absence of any evidence to account for the plaintiff slipping and falling at the time and place there is substantial evidence from which a jury could, without conjecture and speculation, find that the patches of snow and ice on the steps were the cause of plaintiff's fall.

Defendants rely on McClure v. Koch, 433 S.W.2d 589 (Mo.App.1968), a case involving a fall by plaintiff on a ramp leading from a parking lot to a sidewalk in front of a store. However, we do not believe the holding in McClure controls here, for there the court found that there was an absence of any evidence that the ramp on which the plaintiff fell was wet or that there was any foreign material of any kind thereon to account for what might have caused her to fall. Furthermore, the defendant proprietor of the grocery and meat store who did not see her fall but came upon the scene immediately thereafter, examined the ramp where she fell and observed nothing on it to account for her falling. He examined the ramp and found no foreign substances on it. In addition to the foregoing, and although not a factor in its holding, the court said, l. c. 594:

"There is another factor in this case on which we do not rule but we think it deserves comment. Plaintiff in her testimony equivocates as to the cause of her fall. As her testimony shows, she *assumed* she slipped and then she said that she slipped because her ankle turned.

Again she said 'I *think* I slipped.' Finally saying that she did not know why she slipped because it happened so fast and then she speculated that she must have slipped because her ankle turned. This is far from being substantial evidence to show that the slope of the ramp was the cause of her fall."

There is no equivocation here and there is evidence of patches of ice and snow on the steps on which plaintiff slipped.

Defendants also cite Willoghby v. Safeway Stores, 397 S.W.2d 748 (Mo.App.1965), a case in which the plaintiff fell over a wrinkle in a rubber floormat in defendant's store and a judgment in her behalf in a court tried case was reversed. The question before the court in Willoghby was, l. c. 751: "whether plaintiff has sustained her incumbent burden of proof to support her pleaded allegation that the floor mat was in an unsafe condition by adducing a preponderance of credible evidence to show the presence of a wrinkle in the rubber mat *prior to and at* the time she stumbled on it and fell." Finding that there was nothing in her testimony to establish this element of her case the court remarked about her failure to see a wrinkle in the mat prior to her fall and the lack of any such evidence by any other witness that there was a wrinkle in the mat prior to her fall. It is apparent from the evidence that the wrinkle in the mat may well have been occasioned by her fall. There is no way that we could conjecture that the patch of snow and ice on the steps could have been occasioned by the plaintiff's fall here. Willoghby did recognize, however, that circumstantial evidence might have been used to establish the missing essential element of her case and that such circumstantial evidence need not have the quality of absolute certainty, although proof by circumstantial evidence to supply it would have had to be sufficient to establish the desired inference with such certainty as to cause it to be the more reasonable and probable of the conclusions to be drawn and

to rise above the stature of guesswork, speculation or surmise.

■ Unlike McClure, supra, there is here no equivocation on the part of the plaintiff concerning the cause of his fall. There is no evidence that he might have turned his ankle. Rather it is admitted by the defendants' fellow member, Mr. Haefner, that he did not get all of the patches of ice and snow off the steps and Mr. Pelker confirms that. And unlike Willoghby we conclude that there is sufficient circumstantial evidence that the plaintiff's fall was occasioned by the patches of ice and snow on the steps which were there prior to plaintiff's slipping and falling. We hold that the plaintiff made a submissible case.

Defendant's second point, that the trial court erred in reading to the jury the plaintiff's verdict director, Instruction No. 2, because it failed to submit to the jury the question of agency is, in our opinion, likewise without merit. The thrust of defendants' argument is that because their Answer contained a general denial, the issue of agency was in the case. They then argue that the evidence was that Mr. Haefner, at the time of the occurrence, was employed as a laborer by the Bank Building and Equipment Company and working on a new building which was being built at the rear of the Union Hall. They admit in their brief that Mr. Pelker was the only union member who had authority to tell Mr. Haefner to sweep the steps. They contend that the question of who was the employer of Mr. Haefner was a disputed issue, an instruction submitting the issue of "scope and course of employment" should have been given and the failure of the court to instruct on this issue constituted error. Plaintiff, on the other hand, argues that he did not plead the question of agency.

■■ Disposing of the defendants' contentions, there is no question from the evidence that plaintiff's theory was that it was the defendants as an unincorporated association who owned the premises and occupied the Union Hall and they, as such, were burdened with the duty to exercise ordinary care to keep the premises in a reasonably safe condition for invitees who might venture thereon; that one of the members of the Union, Mr. Haefner, attempted to clear the steps of ice and snow but in doing so failed to remove some patches of ice and snow from the steps and thereby led persons using them, in particular the plaintiff, to believe the steps were reasonably safe for normal use when in fact they were not, but were dangerous by reason of the patches of ice and snow aforesaid. Whether Mr. Haefner was employed by Bank Building and Equipment Company at the time of this occurrence is wholly immaterial and irrelevant to the issues of this case for at no time did plaintiff contend either in his pleadings or his proof that this was the theory of his case. The evidence is uncontradicted that at the time Mr. Haefner swept the steps of the Union Hall he did so as a member of the Union pursuant to the directions of a business representative and officer of the Union—not as an agent for the Bank Building and Equipment Company. Mr. Haefner, by reason of the class action, was a party defendant in this case, and the real gist of the basis for vicarious liability of the class in this case is whether the defendants as a class may be held liable for the negligence of the unincorporated labor organization which was the owner of the Union Hall. While there is no direct evidence in support of the plaintiff's allegation that the defendants are members of an unincorporated labor organization, the defendants have not preserved that question for review in this court. "Generally labor unions are voluntary unincorporated asssociations, . . ." 48 Am.Jur.2d Labor and Labor Relations, § 57. "The general rule deducible from the cases which have passed on the question is that the members of an unincorporated association are engaged in a joint enterprise, and the negligence or fault of each member in the prosecution of that enterprise is

imputable to each and every member . . . ." 6 AmJur2d Associations and Clubs, § 31.[1] The record in this case reveals that the plaintiff's evidence established through Mr. Paul Pelker, a union representative and officer, that it was he who directed fellow-union member, Mr. Haefner, to sweep the steps of the Union Hall. However, it was the defendants' counsel during the defendants' case who called Mr. Haefner to the stand and developed from him on direct examination that he was a member of the Union, that Paul Pelker was an officer and business representative of the Union who had the authority to tell him to clean the steps and to do work around the Union Hall. On cross-examination the following testimony of Mr. Haefner was elicited:

"Q. Now did you clean the steps on the direction of Mr. Pelker, Paul Pelker?

A. Paul or Tony had the authority to tell me to do the work around there."

With the record in this condition we conclude that the vicarious liability of the defendants was never seriously contested by the defendants. In their motion for new trial it is apparent from a reading of same that the objection lodged against Instruction No. 2 assumed that there was a dispute in the case relative to Mr. Haefner's agency. We hold that there was not and the holding in Terry v. Sweeney, 420 S.W.2d 368, 376[9] (Mo.App.1967) that it is not necessary to define "scope of employment" in a verdict directing instruction where the question of agency was not a contested issue is controlling here.

Defendants' third, and final point, is concerned with the "insurance question" asked by plaintiff's counsel during the voir dire examination of the panel prior to selection of the jury to try the cause. A foundation was laid in chambers for the propounding of the question to the jury and it was there established that the name of the carrier was United States Fidelity and Guaranty Company. The usual objection to the inquiry was made and overruled but plaintiff's counsel was given the usual warning that the question had to be interspersed with other questions so as not to emphasize the nature of the subject matter of the question. During the voir dire, and after plaintiff's counsel had made inquiries as to whether any member of the jury panel or any member of their immediate family had made any claims for damages, and developed from each juror who indicated that he or she, or a member of his or her immediate family had done so, the nature of the claim, how long ago it happened, whether it was in suit and whether that fact would prevent the juror from giving either party to the case a fair trial, immediately upon the conclusion of this line of inquiry, the plaintiff's counsel asked:

"Is there any member of the panel, or any member of their family, that has a financial interest in or is employed by United States Fidelity and Guaranty Insurance Company?"

Defense counsel immediately requested permission to approach the bench and, out of hearing of the jury, moved for a mistrial and discharge of the jury, on the grounds that counsel had injected the word "insurance" into the title of the defendants' insurance carrier. The trial court denied

---

1. We do not consider the question whether a member of an unincorporated association or club who has suffered damages to his person, property, or reputation through the tortious conduct of another member of the association may bring suit against the association or club, or his fellow member for said damages because it is not preserved for review. See: Goins v. Missouri Pacific System Federation of Maintenance of Way Employee Union et al., 272 F.2d 458, 460[2] (8th Cir. 1959); West's Digest Associations ▆▆▆ ; 6 Am. Jur.2d Associations and Clubs, § 31; Anno. 14 A.L.R.2d 473. Contra: Marshall v. International Longshoremen's & Warehousemen's Union, 57 Cal.2d 781, 22 Cal.Rptr. 211, 371 P.2d 987 (1962).

the motion for mistrial but admonished plaintiff's counsel "to leave well enough alone." Counsel then stepped down from the bench and plaintiff's counsel never obtained any answer to the question from any of the jurors but pursued a line of questioning foreign to the subject without any explanation whatsoever.

Defendants argue that the question as asked was in total disregard of the trial court's earlier ruling in chambers, that plaintiff's counsel knew the correct corporate name of the defendants' insuror and that to permit counsel to disregard the trial court's ruling relative to the phraseology of the "insurance question" would be to condone the bad faith conduct of counsel. Plaintiff's counsel replies that it was a mere slip of the tongue, a good faith error and in no way intentional, and the real question is whether defendants were thereby prejudiced.

 While the "insurance question" has been a source of travail for many year, it is the established policy of this state that in a proper case the question may properly be addressed to the members of the jury panel in voir dire examination. It would serve no purpose to support this statement with citations. Whether, when in the propounding of the question to elicit from the members of the jury if they or some members of their immediate families have a financial interest in, or are employed by some insurance company, which is conducting the defense of a law suit, the term "insurance" is inadvertently injected into the corporate name of a company which is in fact engaged in the insurance business but whose name would not so indicate, clearly constitutes error so prejudicial as to require a mistrial and discharge of the jury is, in our opinion, best left to the discretion of the trial judge present at the time, except in those unusual cases where the record clearly demonstrates an abuse of discretion or a deliberate course of conduct on the part of counsel to inject into the case the fact that the insurance company, and not the defendant, is the real

party who stands to gain or lose, dependent on the outcome of the case. We believe that this approach to the question is in line with McCaffery v. St. Louis Public Service Co., 363 Mo. 545, 252 S.W.2d 361, 367[5] (banc, 1952) where categorizing Transit Casualty Company as an insurance company was held improper, but not to require a mistrial. We rule this point against defendants.

Having disposed of each of the defendants' contentions, we affirm.

SMITH, C. J., and STEWART, J., concur.