**John M. McILROY, Executor of the Estate of Frances T. Tucker, Deceased, Appellant,**

v.

**John W. HAMILTON and Edith Ann Hamilton, husband and wife, Respondents.**

No. 36386.

Missouri Court of Appeals, St. Louis District, Division Two.

July 6, 1976.

McIlroy & Millan, John M. McIlroy, Bowling Green, for appellant.

John W. Briscoe, New London, for respondents.

KELLY, Judge.

John M. McIlroy, Executor of the Estate of Frances T. Tucker, deceased,[1] appeals from a judgment of the Circuit Court of Pike County dismissing his petition for mandatory injunction and restraining order with prejudice wherein he sought a permanent injunction restraining the Hamiltons from blocking a roadway across their farm and from diverting the natural flow of water from a spring located on the Hamilton farm. We affirm.

Appellant's petition alleged that Frances T. Tucker was the owner and possessor of a tract of land in Pike and Ralls County adjoining respondents' land and which, prior to a transfer of December 26, 1972, was the property of Cecile Thompson; that for more than 40 years Mrs. Tucker and her predecessors in title, her agents, employees and other persons, going to and from her farm, travelled through the property of the respondents on a roadway beginning at the southeast corner of the Hamilton farm and running along the east line of said tract in a northerly direction for a distance of approximately 1320 feet, thence in a westerly direction for a distance of approximately 300 feet, and thence in a northwesterly direction meandering through the property of respondents until it reached the west line of their property, which also comprised the east line of appellant's property; that in

addition to this roadway there was an alternate route, identified in the petition as the southernmost part of the roadway, which extended out into the property of the respondents about 100 yards in a general north and south direction paralleling the east fence line of respondents' property and which was used alternately with that part of the roadway which was immediately adjacent to the east line of respondents' property; that the user of the roadway was adverse to the respondents' rights and was open, notorious, continuous and uninterrupted; that as a result of their usage an easement was obtained by prescription; that the respondents and their predecessors in title were aware of the use, its character and the claim of right on the part of decedent and persons using the roadway in order to reach her premises; that in the spring of 1973, respondents plowed up a portion of the southernmost part of the roadway and bulldozed in an additional part of the southernmost part thereof to such an extent that the roadway was no longer passable so that appellant and others desirous of reaching her property had to go out into cultivated farm land to do so; that sometime in August or September, 1973, respondents padlocked the gate providing entrance to their property at the southeast corner of respondents' property and refused access thereto to an agent of appellant and blocked the road; that ingress and egress over the roadway to appellant's farm has thereby been prohibited and this is the only access available to Mrs. Tucker, her agents, etc., over which large machinery and trucks can operate; that there are growing crops planted on the Tucker farm and she is unable to harvest them or remove them by reason of the continued blocking of the roadway; that demand has been made upon the respondents to remove the barriers and replace the road but the demand was refused by respondents. Appellant further alleged that the erection and maintenance of the barrier and the plowing and bulldozing

1. The petition in this cause was originally filed by Lillie Lou Jones, Guardian of the person and estate of Frances T. Tucker, an Incompetent; on October 15, 1973, the death of Mrs. Tucker was suggested to the trial court and John M. McIlroy, Executor, was then substituted as party plaintiff.

of the road constitutes a nuisance depriving appellant of the use of the roadway and unless respondents are enjoined and restrained from maintaining the nuisance appellant will suffer great damage, injury and loss and will not be able to carry on farming operations. Appellant alleged further that there is a natural flowing spring on respondents' premises, the overflow of which runs through Mrs. Tucker's property; that a part of this water is piped to a water trough used for many years by her and her predecessors in title; that respondents, appellant believes, are intending to cut off access to the spring and its water by diverting the flow thereof by various means to her irreparable damage; that she is entitled to continued use of the spring water as a result of uninterrupted use of same for more than 10 years; that said use has been adverse, actual, open, continuous and with the knowledge of the respondents and their predecessors in title and under a claim of right. She asserts that she has no adequate remedy at law and prays for a Mandatory Injunction requiring the respondents to abate the nuisance and remove the locks from the gate, remove any obstruction from the roadway, except any gate which might be necessary to protect livestock and which might be reasonably placed thereon, to place the roadway in the same condition it was before they plowed and bulldozed it, that respondents be perpetually enjoined from maintaining any obstruction or nuisance upon the roadway, and that appellant be declared to have an easement by prescription over the said roadway. Appellant also sought an injunction perpetually restraining respondents from creating any diversion or terminating the flow of the spring water onto the appellant's premises.

Respondents filed their Answer admitting ownership of the farm which they acquired by deed as alleged by appellant from Cecile Thompson but denied each and every other allegation of appellant's petition. They also filed a Counterclaim for $1,000.00 damages for the destruction of crops and pasture land caused by appellant. Appellant's Reply was a general denial of the allegations contained in respondents' Counterclaim.

With the pleadings so framed, the cause came on for trial. Appellant produced the testimony of Dan T. Tucker, the son of decedent and her husband, E. A. Tucker, together with that of a large number of other witnesses, most of whom testified to the fact that they had, over the years, traversed the Hamilton farm in going to and from the Tucker farm—as Appellant's farm shall hereinafter be identified—over and along the roadway on which appellant seeks to establish an easement by prescription. These witnesses may aptly be categorized into two groups: one consisting of people who had done business at the Tucker farm and a second group, those who were friends and neighbors of the Tucker family. The deposition of Miss Cecile Thompson as well as that of one Charles H. Benn were filed with the trial court for his perusal and consideration. Respondents' evidence consisted in the testimony of Mr. McIlroy relative to the preparation of an "Affidavit of Adverse Possession" by James H. Bernard (Defendants' Exh. 1) and another such affidavit by J. E. Megown (Defendants' Exh. 3) both executed on December 16, 1972, concerning Miss Thompson's title to the Thompson farm, and the fact that these were prepared by James Millan of the law firm of McIlroy and Millan incorporating therein descriptions of the subject property prepared and reviewed by respondents' counsel, Mr. Mills, and obtained by him from the abstracts of the Ralls County Abstract Company and the Pike County Abstract Company. The inventory of the Estate of Mrs. Tucker was also identified and introduced into evidence as Defendants' Exhibit 4. Defendants' Exhibit 2—a deed dated March 16, 1934—to the Tuckers was also introduced into evidence by respondents.

The cause was taken under advisement and subsequently the trial court filed a memorandum and judgment in which it made reference to the testimony of Dan Tucker, the son of appellant's deceased and one of the devisees of the Tucker tract, wherein, on cross-examination, Dan Tucker

answered: "We had permission to go through there long before I ever rented that ground." Reference was likewise made to the testimony of Cecile Thompson, given by deposition, that those crossing her land to get to the Tucker farm did so "With our permission." It is clear that the trial court's conclusion was also influenced by "defendants' Exhibit 2," the deed of March 16, 1934, which recited that "[t]he purpose of this deed is to give 2nd parties (E. A. Tucker and Frances Tucker, husband and wife) an outlet over 1st parties' (James P. Thompson and Mattie Thompson) land to said road across above described premises;" from this deed the trial court concluded that had the use of the roadway been adverse and under a claim of ownership, rather than permissive, plaintiff-appellant's predecessors in title would have already had an outlet, and the quoted portion of the deed gave rise to the inference that the use was recognized by both parties to the deed as permissive only. The trial court thereupon concluded that the original use was a permissive use, that the use had not changed in character, and therefore there could be no prescriptive easement.

With reference to the spring the trial court's memorandum further found that plaintiff-appellant claimed no interest other than a right to the "overflow," that it appears the overflow was still running on plaintiff-appellant's land, that this too was a "permissive intrusion" because defendants'-respondents' predecessor in title determined where the pipe could and could not be placed and permitted its placement in its present location.

Because defendants-respondents offered no evidence in support of their counter-claim, judgment was entered for the plaintiff-appellant thereon.

On appeal, the appellant presents four points for reversal of the trial court's judgment and requests this court to remand the cause to the trial court with directions to enter judgment for the plaintiff-appellant establishing an easement both as to the roadway and the spring, and for the granting of the injunctive relief prayed. Point I is directed to the admission into evidence of the deed of March 16, 1934 (Defendants' Exh. 2). Points II, III and IV are that the trial court erred in entering judgment for the defendants-respondents on the ground the judgment is against "the greater weight of the credible evidence."

In reviewing a judgment in an equitable proceeding, the appellate courts of Missouri have been directed by the Supreme Court to examine the record and to sustain the decree of the trial court except where there is no substantial evidence to support the decree, the decree is against the greater weight of the evidence, the decree erroneously declares the law, or the decree erroneously applies the law. The exercise of this power to set aside a decree on the ground that it is "against the weight of the evidence" must be with caution and only when the reviewing court has a firm belief that the decree or judgment is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32[2] (Mo.banc 1976).

An easement by prescription to the use of a roadway across the lands of another may be established by a use which has been shown to have been continuous, uninterrupted, visible and adverse for a period of at least ten years. One who claims an easement by prescription has the burden of establishing all of the essential requirements by clear and positive evidence, and any doubt as to the character of the use is to be resolved in favor of the free and untrammeled use of the land. The adverse use of land with respect to the creation of an easement by prescription is one which does not recognize in those as against whom it is claimed to be adverse any authority either to prevent or permit continuance of the use. It is the nonrecognition of the authority at the time the use is made which determines whether the use is an adverse one. Proof of open, notorious, continuous, and uninterrupted use for the requisite ten year period, in the absence of evidence to explain how the use began, raises a presumption that the use was adverse and under a claim of right, thereby casting upon the owner of the servient estate the burden

of showing that the use was permissive and by virtue of some license, indulgence or agreement inconsistent with the claim of right. *McDougall v. Castelli*, 501 S.W.2d 855, 858[3, 4] (Mo.App.1973). Long continued use alone will not create any prescriptive right, nor will mere permissive use of land ripen into an easement by prescription. *George v. Dickinson*, 504 S.W.2d 658 (Mo. App.1974).

▉ The crux of this case is whether the use made of the roadway by the Tuckers and their agents, guests, etc. had its genesis in a permissive or an adverse usage. The trial court concluded that it had its origin in permission and could not therefore ripen into an easement by prescription. We conclude that on the basis of the evidence in this record the trial court cannot be said to have erred, and we do not find this judgment to be subject to any of the errors set out in *Murphy v. Carron*, supra, which would justify us in reversing it.

The uncontradicted evidence, we think, is that both of the tracts of land involved in this litigation were originally a single tract of land owned by the grandfather of both Mrs. Tucker, the decedent, and Miss Thompson, the respondents' predecessor in title. Upon the death of the grandfather the single tract was divided approximately in half, the parent of Mrs. Tucker—Green Thompson, taking title to approximately 200 acres, being the western half of the tract, and James P. Thompson, the parent of Miss Thompson, taking title to approximately 204 acres comprising the eastern half of the tract. The family home was situated on that portion of the original tract to which James P. Thompson took title. Upon the death of the respective parents, title to these two farms descended to Mrs. Tucker on the one hand and to Miss Thompson on the other. We conclude, as did the trial court, that because of the origin of these two farms from the single tract and the fact that they were occupied by blood relatives, the roadway was treated as a "family" usage despite the fact each of the two families exercised dominion over their respective tracts.

Appellant's evidence went to great effort to demonstrate that no one ever specifically sought permission of Miss Thompson or her predecessors in title to the use of the roadway across the Hamilton farm; the purpose of this line of inquiry was an attempt to show adverse usage. He argues that the testimony of Dan T. Tucker, seized upon by the trial court to support its finding that the user had its origin in permission, was the result of respondents' trial counsel's phraseology in propounding questions to Mr. Tucker, and when taken with the whole of Mr. Tucker's testimony refutes that conclusion.

The testimony referred to by appellant's counsel in this argument and incorporated into the trial court's Memorandum occurred during cross-examination of Dan Tucker and is:

"Q. And was all this time was all this by permission from Mrs. Cecile Thompson under her rental agreement with you that you were using the land?

A. We had *permission* to go through that long before I ever rented the ground." (Emphasis supplied).

While we note that there was some testimony by Mr. Dan Tucker that he felt he had a "right" to go through the Hamilton property at any time and that no one gave him this right, and that Miss Thompson testified that E. A. Tucker, Mr. Tucker's father, never asked permission, "we never granted any consent," and that she never told Dan Tucker not to use the road, it is pure conjecture to argue that the witnesses equated the term "permission" with the term "right" in the legal sense. We believe the trial court, taking into account the familial relationships existing between the owners of the adjacent tracts prior to the time Miss Thompson sold her farm to the Hamiltons, and the other evidence in the case, correctly decided that the user of the roadway had its origin in permission, albeit not specifically stated.

▉ Other evidence supportive of the conclusion reached by the trial court was

the testimony of Miss Thompson when she testified that the roadway in question was regarded as a "family road," for the use of any of the family that wanted to use it. Visitors, she testified, were also free to use the roadway. Dan Tucker, when asked on redirect examination if he observed other vehicles and people going in and out of the Hamilton farm on this roadway while Miss Thompson owned it, replied: "Well, it was with her understanding that anybody that wanted to come in there, why, they had permission to come. She was most welcome to have them." Between 1966 and 1972, and up to the time the farm was sold to the Hamiltons, Dan Tucker rented a portion of the farm and "farmed" it. He and Miss Thompson had an amicable relationship. When one of Miss Thompson's calves was killed it was both he and Miss Thompson who padlocked the gate at the entrance to the Hamilton farm to keep out intruders and both he and Miss Thompson retained keys to the padlock on the gate. Any prescriptive right Dan Tucker had would necessarily have ripened prior to 1966 when he became Miss Thompson's tenant, for the use of a roadway by a tenant is no basis for the establishment of an easement by prescription against the landlord. *Guerin v. Yocum,* 506 S.W.2d 46, 48[4] (Mo.App.1974).

Appellant's argument that the 1934 deed conveying to the Tuckers a thirty foot easement for roadway purposes extending along the southern boundary line of the Hamilton tract from the southeast corner to the southwest corner of the Hamilton tract should have been excluded from evidence is based upon its contention that "the contents thereof were immaterial and irrelevant . . . ." "Objections that testimony is 'incompetent,' 'immaterial,' 'irrelevant,' 'self-serving,' 'prejudicial,' and the like, without specification of reason, are generally considered insufficient to preserve anything for review." *Teters v. Kansas City Public Service Company,* 300 S.W.2d 511, 515[2] (Mo.1957), *State ex rel. West v. Diemer,* 255 Mo. 336, 350, 164 S.W. 517, 521[1–3] (1914).

Nor does the record in this case ease our burden in deciding this point even were it properly preserved. The deed dated March 16, 1934, was initially employed by respondents' counsel in the cross-examination of Mr. McIlroy who was, at the time, testifying as a witness for appellant—i. e., himself. Objection at that time was made that: " . . . any evidence relative to any right of ways other than those described in the petition is totally irrelevant and immaterial. There are no pleadings naming any other property. This isn't a request for a right of way of necessity and we object to any evidence having to do with any other rights of way." Respondents' counsel argued in response to this objection that the objection was without merit because the petition filed by the appellant described all public roads and right of ways of record; that this being a right of way of record mentioned in the pleadings was therefore admissible. A recess was taken, conference in chambers held, and when the court was reconvened, the trial court overruled appellant's objection. Respondents' counsel then proceeded by referring to an "abstract" of the deed identified as "entry number 63" and asked Mr. McIlroy to state who was named as the grantor and grantee in the deed. Referring to the abstract Mr. McIlroy replied that the grantors were James P. Thompson and Mattie Thompson and that the grantees were E. A. Tucker and Frances Tucker, husband and wife. After this answer was given, appellant's counsel advised the trial court that he was not objecting to these questions because he understood that the trial court had overruled his objection to the showing of this separate conveyance and in the interest of time the "abstract" could be used rather than the deed of the Recorder; but he wanted it understood that he was objecting to "the showing of this for any purpose into the record." The trial court replied: "Very well. That objection is preserved and overruled."

Subsequently, after the appellant's counsel announced to the trial court that he had rested his case, respondents' counsel requested leave to recall Mr. McIlroy for the

purpose of clarifying some points which had been developed on cross-examination with reference "to the entry number 63, an abstract of title" so they could substitute for the abstract entry a copy of the original document and the trial court would have a more convenient reference. Appellant's counsel announced that "they" were willing to stipulate to "that" whereupon respondents' counsel had the deed marked for identification as "Defendants' Exhibit Number 2." Mr. McIlroy thereupon stated: "We have no objection. I think I have another number two. Are you correct in your numbers? Well, all right. We have no objection." Mr. McIlroy was then asked by respondents' counsel if he had previously had an opportunity to examine the exhibit and he replied that he had. At this point "Defendants' Exhibit Number two" was offered into evidence and the trial court announced: "There being no objection, Defendants' Exhibit two is received in evidence."

One interposing an objection has the burden of making the basis for his objection "reasonably apparent" to the trial court. *Crabtree v. Reed,* 494 S.W.2d 42, 45[3] (Mo. 1973). From the aforesaid colloquy the record is not clear whether the appellant has waived any objection to the reception into evidence of the deed of March 16, 1934, or whether he was merely consenting to the substitution of the deed itself for the "abstract entry number 63" previously used in cross-examination of Mr. McIlroy. Paragraph 4 of his Motion for New Trial reads: "The Court erred in *admitting* Defendants' Exhibit No. 2, same being a Deed dated March 16, 1934, which said Deed conveyed property not in the right of way sought to be established in this Cause and was immaterial and improper evidence in the trial of the issues in this Cause." (Emphasis supplied). If, as the grounds stated in the Motion for New Trial would indicate, it is the admission into evidence of the deed of March 16, 1934, appellant relies on, both he and his trial counsel voiced no objection to its admission into evidence, and cannot now be heard to complain.

Nevertheless, even were we to conclude that appellant and his counsel did not waive his objections in view of the equivocal status of the record on this point, his concession that he was not seeking a way of necessity in this cause of action does not render the deed "irrelevant and immaterial." Relevancy is the relationship between the offered fact and the fact in issue to such a degree that the existence of the offered fact logically renders probable the existence of the fact in issue. *Crowley v. Crowley,* 360 S.W.2d 293, 295[2] (Mo.App. 1962). The existence of this deed of March 16, 1934, granting to the deceased and her husband a separate and distinct easement for a roadway renders probable the conclusion that both parties to the deed recognized the use of the roadway over which appellant seeks to establish an easement by prescription in this cause of action was not adverse, but rather permissive. Not only was this deed relevant on the issue of permissive use, but it also constitutes substantial evidence sufficient to rebut the presumption of adverse use arising from the evidence of open, continuous and uninterrupted use of the roadway for many years.

We rule that the trial court did not err in admitting into evidence and considering this deed of March 16, 1934, in arriving at its decision that the use of the roadway in question was not adverse and by claim of right. We find no merit in appellant's first three points and rule them against appellant.

The fourth, and final point, on appeal is whether there was sufficient evidence to support the trial court's holding that appellant's use of the spring located on the Hamilton farm was permissive. The evidence at trial was that there was a spring located on the Hamilton farm approximately 50 or 60 feet east of the Tucker farm boundary line, which had continuously furnished springwater over a period of many years. Mr. James P. Thompson, at some time, many years ago, had inserted a pipe into the bluff from whence the spring flowed and piped the water to a trough situated on his farm. According to Miss Thompson, the Tuckers

never acquired "any interest" in this spring, but her father allowed them to lay down pipes and take the overflow because "the overflow flowed into a branch that went through E. A. Tucker's farm." Howard Barnard, a witness for the appellant, who, between 1917 and 1922 lived with his parents on the Hamilton farm in the home in which the Thompsons had lived, testified that at one time he worked for E. A. Tucker. While he lived on the Hamilton farm he was familiar with the spring. Sometime in 1920 he helped Mr. Tucker put in a trough and run a pipe from the spring to the trough on the Hamilton farm. Because Mr. Thompson would not allow them to put the pipe into the Thompson trough, he and Mr. Tucker built a ditch where the water overflowed from the Thompson trough, installed a pipe in the ditch, and ran it through a fence into a trough on the Tucker farm. This pipe simply collected the overflow from the Thompson trough and carried it to the trough on the Tucker farm after which the water drained to a branch on the Tucker farm and then into two ponds on the Tucker property. He had never seen the spring when it wasn't full of water. In July, 1973, Dan Tucker had a conversation with Mr. John Hamilton, one of the respondents, and asked him why he put rocks in the pipe or why it was stopped-up all of the time. Mr. Hamilton, he testified, "said he was going to impound the water."

The trial court's memorandum recites that it concluded from the evidence that the appellant claimed no interest other than a right to the "overflow," and that the pipe extending onto respondents' land was a permissive intrusion because respondents' "predecessor in title determined where the pipe could and could not be placed and permitted its placement in its present location." It further found from the evidence that "the overflow presently runs on the plaintiff's land." Although it did not specifically so state, it is clear that it concluded that appellant had failed to establish the elements necessary for a prescriptive user of the spring waters and that any rights he had were being interfered with.

It is clear from a reading of appellant's brief that he has, in this court, attempted to mount a two-pronged attack on the trial court's holding with respect to the rights he sought to protect in the spring on respondents' farm. However, the theory he pled in the trial court was one based upon a prescriptive right to the overflow by reason of usage for a period of time in excess of ten years, which usage allegedly was "open, adverse, actual and continuous and within the full knowledge of the Defendants and their predecessors in title" and under a claim of right. The first portion of his argument here is what might be termed a "riparian rights attack" based upon a "reasonable use doctrine" applicable to natural watercourses and subterranean streams. The second attack is based on the theory upon which he pled and tried his case in the trial court; i. e. prescriptive right. It is also clear that appellant is cognizant of this shift in theories. After arguing the "riparian rights" approach, he then states: "Although we do not believe the Court must deal with the matter of whether the Plaintiff and his predecessors and successors in title have obtained a prescriptive easement to the use of water and the location of the pipe, if it chooses to consider this matter, we believe the evidence is sufficient to establish same in behalf of the owners of the Tucker farm."

▄ An appellant cannot change his theory of the case between trial and appeal; he must pursue review of the trial court's judgment on the same theory on which he tried his case in the trial court. *Hulahan v. Sheehan,* 522 S.W.2d 134, 139[4] (Mo.App. 1975). For this reason our review in this appeal shall be limited to whether the trial court correctly found that appellant had failed to establish a prescriptive easement to the use of the waters of the spring.

▄ The uncontradicted evidence is that it was James P. Thompson who determined where the pipe to catch the overflow from his trough on his farm should be located, and that it could not be tapped into his trough. He did, however, permit appellant's predecessor in title, E. A. Tucker, to

dig a ditch and install the pipe to carry the overflow from his farm to the Tucker farm. Appellant contends, however, that this pipe was subsequently attached to the trough on the Thompson land. The basis for this contention is the testimony of Durward Sorrell. However, Mr. Sorrell's testimony is in direct conflict with that given by Dan Tucker who testified that the pipe has always been in its present location and was never connected to the Thompson trough, and that of Mr. Barnard, who assisted in the installation of the pipe in the ditch. The trial court had the benefit of observing the witnesses and chose to believe Dan Tucker and Mr. Barnard. We defer to the trial court in this conflict of testimony. *Guerin v. Yocum,* supra, l.c. 47[1] Whatever rights appellant's predecessors in title might have had as riparian owners would not have entitled them to enter upon the Thompson farm and tap into the trough located thereon, in the absence of any agreement or contract between the parties or unless they had obtained an easement by prescription. 93 C.J.S. Waters § 91. We conclude that the trial court did not err in holding that the evidence in this case did not establish an easement by prescription to the collection of the overflow of the spring-water on the Hamilton farm.

We do not reach the question of what rights, if any, the appellant might have to the use of the overflow of the spring-water under the "reasonable use doctrine" or whether they have been violated by the respondents because that was not the theory upon which this case was tried in the trial court.

The judgment of the trial court is affirmed.

STEWART and RENDLEN, JJ., concur.