**Harriett ROBERTS, et al.,**
**Plaintiffs–Respondents,**

v.

**MENORAH MEDICAL CENTER,**
**Defendant–Appellant.**

**No. WD 41533.**

Missouri Court of Appeals,
Western District.

Oct. 3, 1989.

Edward H. Sheppard, Kansas City, for defendant-appellant.

Robert D. Kingsland, Kansas City, for plaintiffs-respondents.

Before CLARK, P.J., and LOWENSTEIN and BERREY, JJ.

BERREY, Judge.

The appellant, defendant below, appeals a judgment rendered in favor of respondents, plaintiffs below, after a jury trial in the circuit court of Jackson County. Re-

spondent, Harriet Roberts, filed this civil action seeking recovery of damages for a personal injury she suffered when she fell in a hallway at Menorah Medical Center (Menorah). Her husband, Ben Roberts, sued for loss of consortium. Respondents' theory of the case was grounded on the premise that Harriet was an invitee at the time of her slip and fall on appellant's premises and that she was injured as a result of appellant's negligence.

The trial court denied appellant's motion for a directed verdict at the close of respondents' evidence, as well as its motion for directed verdict at the close of all evidence. The jury brought back a verdict awarding $311,590.11 in damages to Harriett and awarding $15,000 in damages to Ben. The jury assessed 65% of the fault to Menorah and 35% of the fault to Harriet. Thus, the trial court entered judgment for Harriet in the sum of $202,533.57, and for Ben in the sum of $9,750.

Appellant briefs four points in this appeal: (1) That the trial court erred in its denial of appellant's motions for directed verdict and post-trial motion for judgment notwithstanding the verdict as there was no substantial evidence that Harriet Roberts was an invitee or that Menorah owed a duty to her; (2) That the trial court erred in its denial of appellant's motions for directed verdict and post-trial motion for judgment notwithstanding the verdict because respondents failed to make a submissible case in that there was no substantial evidence that the condition of the water on the surface of the hallway caused Harriet's fall; (3) That the trial court erred in giving Instructions 9 and 13 as these were MAI 22.03 instructions classified as "Verdict Directing—Invitee Injured" as respondents failed to establish Harriet's status as an invitee by substantial evidence; and (4) That the trial court erred in giving Instructions 9 and 13 because of respondents' failure to prove that Harriet was injured as a "direct result" of appellant's failure.

Directed verdicts and judgments notwithstanding the verdict are both drastic actions. They should only be granted where the minds of reasonable persons would not differ as to the outcome of the case. *Marti v. Economy Fire & Casualty Co.*, 761 S.W.2d 254, 255 (Mo.App.1988). "We review denial of a motion for directed verdict as a question of law, viewed in the evidentiary light most favorable to the non-moving party, and determine whether that party has made a submissible case." *Fricke v. Valley Production Credit Association*, 721 S.W.2d 747, 752 (Mo.App. 1986).

On July 3, 1984, Ben phoned Harriet at her place of employment and informed her that her brother had taken ill. She called her brother's employer and found that her brother was to be taken to the hospital. She suggested Menorah, as his doctor was on staff there. A few hours later she left work, and drove to Menorah, intending to see her brother. Upon her arrival at Menorah, Harriet went to the emergency room where she had expected to find her brother. He was not there and through her investigation she determined he had been taken to his doctor's office instead. As she was walking from the emergency room area to leave for the doctor's office, Harriet had the accident which formed the subject matter in the instant case.

Harriet was walking down a hallway on a white tile floor with dots on it, which were used as directional markers. She rounded a curve in the hall and fell. Immediately prior to her accident she had been watching a man who had a winter outfit on, a "strange" sight, according to her testimony, because of the time of year. She did not see any water on the floor before she fell. She described the fall, saying, "[m]y right foot started aeroplaning, and, like, I was in progress for a step and I came down on this left knee and it sounded just like glass breaking." Her left leg was pinned underneath her and she rolled over, taking her right arm to pull her left leg out from under her.

Harriet cried out for help. Patricia Baumgardner, who was working in her office, heard Harriet's cries and responded to them. She summoned help and then went back to Harriet and comforted her, holding Harriet's head upon her lap. Harriet

reached her arm out and found a puddle of water.

Harriet was taken to the emergency room and cared for there by Dr. Ronald Stitt. Dr. Stitt placed a pin through her leg and she was then placed in traction for "about a week." Surgery followed, and Harriet remained in the hospital until August 4, 1984.

Other witnesses testified that they saw water on the floor at various times before Harriett slipped. Their estimates ranged from a total volume of less than a cup to approximately two gallons. No warning signs were present in the area.

Appellant's first point alleges trial court error in the overruling of appellant's motions for directed verdict at the close of respondent's evidence and at the close of all evidence, as well as the denial of its post-trial motion for judgment notwithstanding the verdict. Specifically, appellant contends that there was not substantial evidence that Harriet was an invitee or that Menorah owed any duty to warn of or remove the water on the floor of the hallway.

■ Missouri law makes a distinction between invitees and licensees. The duty owed by a property owner is governed by the status of the entrant on the premises. This distinction is clearly stated in a recent opinion issued from this court:

> An invitee is one who enters premises with the express or implied consent of the possessor and for some purpose of real benefit to the possessor or for the mutual benefit of both. A licensee is one who enters the premises with the express or implied permission of the possessor, for his own purpose, from motives of curiosity or private convenience, in no way connected with business or other relations with the owner.

*Gillis v. Collins*, 770 S.W.2d 503, 505 (Mo. App.1989).

The crux of this appeal concerns whether the above mentioned test as to Harriet's status as an invitee has been satisfied.

Missouri law refers to the Restatement (Second) of Torts for an accurate definition of what is required for invitee status. *See Gilpin v. Gerbes Supermarket, Inc.*, 446 S.W.2d 615 (Mo. banc 1969); *Singleton v. Charlebois Const. Co.*, 690 S.W.2d 845 (Mo.App.1985); *Hulahan v. Sheehan*, 522 S.W.2d 134 (Mo.App.1975).

The more complete definition of an invitee is found in Restatement (Second) of Torts § 332 (1965):

> § 332. Invitee Defined
>
> (1) An invitee is either a public invitee or a business visitor.
>
> (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
>
> (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

■ The above definition shows that there are two distinct classes of invitees that fall within the broad definition given in *Gillis v. Collins, supra.* Harriet came to Menorah, a hospital which is open to the public, in order to visit her brother. Visiting those who are in the hospital is indeed under the Restatement definition "a purpose for which the land is held open to the public." It is irrelevant that Harriet's brother was not in emergency but at his doctor's office. Her status as an invitee is grounded upon her purpose in visiting the hospital and whether that purpose is consistent with the nature of the business conducted there.

Appellant relies heavily on an outdated case from the Supreme Court of Colorado, *Field v. Sisters of Mercy of Colorado*, 126 Colo. 1, 245 P.2d 1167 (1952), in trying to paint Harriet as a licensee. Colorado no longer follows the law set out in that case [1] and, in any event, this court is in no way bound by it. Nor are the other cases cited by appellant apposite as none deal with

---

**1.** *See Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971) (landowner's liability held not to depend upon the status of the plaintiff).

premises open to the public. Accordingly, appellant's Point I is denied.

In Point II appellant complains that the trial court erred in not granting its motions for directed verdict at the close of respondents' evidence nor at the close of all of the evidence as well as denying its post-trial motion for judgment notwithstanding the verdict. Appellant grounds this point on the allegation that there was no substantial evidence that the condition of the water on the surface of the hallway caused Harriet to fall. Appellant apparently makes this contention based upon the fact that Harriet did not testify using the magic words that her feet were on a water covered surface at the time of the fall. Harriet testified that, "[m]y right foot started aeroplaning, and, like I was in progress for a step and I came down on this left knee and it sounded just like glass breaking." While on the floor, as Ms. Baumgardner was cradling her head, Harriet reached out and felt water. She testified, "I couldn't see down to my toes, but I extended my arm and I was lying in water."

The testimony of several other witnesses established the presence of water in the area where Harriet fell, albeit no one testified as to seeing her fall.

The case of *Hulahan v. Sheehan*, 522 S.W.2d 134 (Mo.App.1975), is instructive. In *Hulahan* the plaintiff slipped on the ice covered stairs of a union hall. Defendant claimed that the evidence failed to establish that the patch of ice upon the stairs was the direct and proximate cause of the plaintiff's fall.

The court stated:

Defendants do admit that the plaintiff testified that he slipped as he was going to take the first step. Mr. Pelker testified that after the plaintiff slipped and fell down the steps he observed patches of ice and snow on the first and second steps in the area where the plaintiff fell. We conclude that in the absence of any evidence to account for the plaintiff slipping and falling at the time and place there is substantial evidence from which a jury could, without conjecture and speculation, find that the patches of snow and ice on the steps were the cause of plaintiff's fall.

*Hulahan v. Sheehan, supra,* 522 S.W.2d at 141.

In the instant case, there was water on the floor where Harriet fell. Harriet herself testified to "aeroplaning" on the surface of the floor. In view of the evidence presented it cannot be said that the trial court committed error. Appellant's Point II is denied.

For its third and forth points appellant complains of the jury instructions given at trial. Both of these points depend on findings in Point I and II that the trial court was in error. The trial court was correct in giving Instructions 9 and 13 as these instructions were based on MAI 22.03 to be used in "Invitee–Injury" cases and Harriet's status was one of invitee and substantial evidence supported the giving of the instructions with the language, "As a direct result of such failure, plaintiff was injured." Appellant's Points III and IV are denied. The judgment of the trial court is affirmed.

All concur.